SIMON & FLYNN, INC.,
Plaintiff-Appellant,

v.

TIME INCORPORATED et al.,
Defendants-Appellees.

No. 690, Docket 74–1976.

United States Court of Appeals,
Second Circuit.

Argued March 3, 1975.

Decided April 2, 1975.

Jack Rabinowitz, New York City (Victor Roger Rubin, New York City, of counsel), for plaintiff-appellant.

Kenneth M. Kramer, New York City (Harold R. Medina, Jr., and Cravath, Swaine & Moore, New York City, of counsel), for defendants-appellees Time, Inc., Time Incorporated Book Clubs, New York Graphic Society, Ltd., and Charles Scribner's Sons.

Before FRIENDLY and FEINBERG, Circuit Judges, and BARTELS, District Judge.*

PER CURIAM:

The lengthy and discursive complaint in this action in the District Court for the Southern District of New York tells a story, distressing if true, which can be encapsulated as follows: Plaintiff, Simon & Flynn, Inc., pursuant to an agreement made in 1967 with the late famed football coach Vincent T. Lombardi, published a copyrighted television film entitled "A Man Named Lombardi". We gather that this film (hereafter Lombardi I) was primarily biographical. Later plaintiff produced "an educational and entertainment series for visual presentation and for the purpose of producing a book". This (hereafter Lombardi II) was called "Vince Lombardi's—The Science & Art of Football" and was devoted essentially to technique, as its title implies. Defendant George L. Flynn, an officer of plaintiff, was entrusted with the task

---

* Of the District Court for the Eastern District of New York, sitting by designation.

of securing a copyright on Lombardi II but apparently did not finish the job. Instead he and defendants Walsh and Commitment Productions, Inc. of New Jersey represented in an agreement with defendant New York Graphic Society, Ltd., a publisher subsidiary of defendant Time Incorporated, that they were proprietors of a book entitled "Vince Lombardi on Football"; this (hereafter Lombardi III) was alleged pirated from Lombardi II.[1] The agreement granted New York Graphic Society, Ltd., the sole and exclusive right to publish the work and market it and license others to do so. At some time defendant Wallynn, Inc., a corporation in which Flynn is alleged to have a substantial financial interest, copyrighted Lombardi III and, under a series of agreements and arrangements involving Time, Inc., Time Incorporated Book Clubs, Sports Illustrated Book Club, Charles Scribner's Sons, Doubleday & Co., Inc., and American Express Co., the work was made available to the public. Plaintiff sought an injunction; damages for infringement of its copyright and common law rights, for unfair trade practices, and for unfair competition; an accounting; and impoundment of existing copies of the work.

Shortly after filing the complaint plaintiff moved, *ex parte*, for an order directing that certain of the defendants be deposed pursuant to F.R.Civ.P. 30(a) and for other relief. Judge Frankel denied this without prejudice as "not sufficiently supported". Apparently the motion to take depositions was not renewed.[2] Defendants moved to dismiss, F.R.Civ.P. 12(b)(1), for want of federal jurisdiction. Plaintiff submitted opposing papers and also asked that, if the

court ruled against it, leave be given to replead. Judge Metzner granted defendants' motion and implicitly denied leave to replead. This appeal followed.

■ Although the complaint based jurisdiction on diversity of citizenship as well as copyright infringement, that assertion was an unwarranted imposition on the court. The complaint disclosed identity of citizenship between plaintiff and at least six and perhaps as many as eight of the defendants, although there was diversity as to four others. (The citizenship of the remaining defendants was not disclosed.) Apparently Strawbridge v. Curtiss, 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806), had not yet come to the draftsman's attention.

■ Counsel seems also to have labored under the impression that an aroma of copyright suffices to make an action one "arising under any Act of Congress relating to . . . copyrights," 28 U.S.C. § 1338(a). While such a view might not be unnatural for a layman, it too runs counter to "precedents going back for more than a century," T. B. Harms Co. v. Eliscu, 339 F.2d 823, 824 (2 Cir. 1964), cert. denied, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965). We there held, 339 F.2d at 828, that:

an action "arises under" the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, e. g., a suit for infringement or for the statutory royalties for record reproduction, 17 U.S.C. § 101, cf. Joy Music, Inc. v. Seeco Records, Inc., 166 F.Supp. 549 (S.D.N.Y.1958), or asserts a claim requiring construction of the Act, as in De Sylva, or, at the very least and perhaps more doubtfully,

1. Apparently there is not much doubt that it was. In addition to comparative extracts that have been furnished us, Flynn's foreward to Lombardi III states that the film series, Lombardi II, "intended for coaches and players," contained scripts and narrative which "have provided the basic blueprint on which these volumes were constructed". The question is rather who has what rights, copyright or otherwise, in Lombardi II.

2. This failure is a sufficient answer to plaintiff's suggestion that it should have been al-

lowed to depose Flynn since perhaps he did obtain a copyright on Lombardi II of which plaintiff is unaware. Beyond that, if plaintiff no longer has records enabling it to tell whether or not it has a copyright on Lombardi II, as it alleges, the Register of Copyrights does. And we reject out of hand plaintiff's suggestion that it is unable to make an adequate search of the records of the Register of Copyrights unless it is first able to depose certain defendants; apparently plaintiff has not even tried.

presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim. The general interest that copyrights, like all other forms of property, should be enjoyed by their true owner is not enough to meet this last test.

See Elan Associates, Ltd. v. Quackenbush Music, Ltd., 339 F.Supp. 461, 462 (S.D.N.Y.1972); Voight v. Kraft, 342 F.Supp. 821, 822 (D.Idaho 1972). Cf. Rosenthal & Rosenthal, Inc. v. Aetna Casualty & Surety Co., 259 F.Supp. 624, 628 (S.D.N.Y.1966).

If the complaint had alleged that Lombardi III infringed Lombardi I, it would have met the first test. But it did not and, from counsel's concession at argument, apparently could not. The Copyright Act gives no remedy for infringement of Lombardi II since no copyright is alleged to have issued, 17 U.S.C. § 13.[3] Casting about for a means of salvage, counsel came up with the so-called "saving clause" of the Copyright Act, 17 U.S.C. § 21.[4] While this may save some copyright owners, it cannot save the plaintiff. As mere reading would show, it applies to cases where a copyright has issued and the copyright proprietor has sought to comply with the provisions of the title with respect to notice but has accidentally omitted the prescribed notice from a particular copy or copies—not to a case where allegedly a copyright should have issued but did not. In another salvage effort, counsel became beguiled with references in the cases and literature to "derivative works". Again a mere reading of the pertinent section of the Copyright Act, § 7,[5] would show that the only possible bearing of that section to this case is that if Lombardi II had been an adapted version of Lombardi I, which it was not, and plaintiff had copyrighted it, which plaintiff apparently did not, plaintiff could have sued for infringement of Lombardi II. See Nimmer, Copyright § 42, at 172 (1974). Plaintiff's real claim is that it has common law rights in Lombardi II which entitle it to relief with respect to the copyrighted work Lombardi III. A consistent theme in its complaint is that it, rather than the defendants, has a "proprietary interest" in that work. This, however, is a state law claim, one that could not come within any of the three categories outlined in *T. B. Harms, supra.* Judge Metzner was thus quite right in dismissing the complaint without leave to repeal.[6]

There was no justification for taking up the time of two district judges with a complaint so far outside federal jurisdiction, still less for appealing from Judge Metzner's clear and correct deci-

---

3. This provides in pertinent part:

    No action or proceeding shall be maintained for infringement of copyright in any work until the provisions of this title with respect to the deposit of copies and registration of such work shall have been complied with.

4. Where the copyright proprietor has sought to comply with the provisions of this title with respect to notice, the omission by accident or mistake of the prescribed notice from a particular copy or copies shall not invalidate the copyright or prevent recovery for infringement against any person who, after actual notice of the copyright, begins an undertaking to infringe it, but shall prevent the recovery of damages against an innocent infringer who has been misled by the omission of the notice; and in a suit for infringement no permanent injunction shall be had unless the copyright proprietor shall reimburse to the innocent infringer his reasonable outlay innocently incurred if the court, in its discretion, shall so direct.

5. Compilations or abridgments, adaptations, arrangements, dramatizations, translations, or other versions of works in the public domain or of copyrighted works when produced with the consent of the proprietor of the copyright in such works, or works republished with new matter, shall be regarded as new works subject to copyright under the provisions of this title; but the publication of any such new works shall not affect the force or validity of any subsisting copyright upon the matter employed or any part thereof, or be construed to imply an exclusive right to such use of the original works, or to secure or extend copyright in such original works.

6. Since the dismissal was for want of jurisdiction, New York CPLR § 205(a) allows six months from the termination of this action for the institution of an action in the state courts, assuming that this action was timely commenced.

sion. Counsel must realize that the decision to appeal should be a considered one, taking into account what the district judge has said, not a knee-jerk-reaction to every unfavorable ruling. The judgment is affirmed, with double costs. 28 U.S.C. § 1912; F.R.A.P. 38. See Furbee v. Vantage Press, Inc., 150 U.S.App. D.C. 326, 464 F.2d 835, 837 (1972).