**Fred V. PEAY, Jr., Individually and d/b/a Chip Peay Music**

v.

**Larry W. MORTON and Ann Morton, Individually and d/b/a Accredit Music; Russ Allison and David Hall.**

No. 82–3242.

United States District Court, M.D. Tennessee, Nashville Division.

July 27, 1983.

Michael Milom and Malcolm L. Mimms, Jr., Nashville, Tenn., for plaintiff.

Scott Siman, Nashville, Tenn., for David Hall.

W. Robert Thompson and Craig Hayes, Nashville, Tenn., for Mortons.

## MEMORANDUM

JOHN T. NIXON, District Judge.

Plaintiff brings this cause of action requesting, alternatively, a permanent injunction and damages for copyright infringement under the Copyright Act, 17 U.S.C. §§ 101, *et seq.,* or a declaratory judgment pursuant to 28 U.S.C. § 2201 that plaintiff is the sole owner of the copyright in the musical composition at issue in this case. Pending is defendants' motion to dismiss or for summary judgment based on their contention that this Court lacks subject matter jurisdiction and that the plaintiff failed to join an indispensable party. Because this

Court has determined that subject matter jurisdiction is indeed lacking, this action must be dismissed.

 Summary judgment is an inappropriate vehicle for raising questions concerning a court's jurisdiction or a defect in parties. *See Boudloche v. Conoco Oil Corp.,* 615 F.2d 687, 688–689 (5th Cir.1980); Wright, Miller & Kane, 10 *Federal Practice & Procedure: Civil 2d* § 2713 at 611–12 (1983). Therefore, to the extent defendant's motion challenges jurisdiction, the Court will treat it as a motion to dismiss under Fed.R.Civ.P. 12(b)(1). In passing on such motions, however, the district courts may consider affidavits and other competent documentary evidence, and resolve disputed jurisdictional fact issues, particularly where the case is not to be tried to a jury. *Berardinelli v. Castle & Cooke, Inc.,* 587 F.2d 37, 39 (9th Cir.1978); *Rosemound Sand & Gravel Co. v. Lambert Sand & Gravel Co.,* 469 F.2d 416, 418 (5th Cir.1972); *Gallogly v. Bakery & Confectionery Wkrs. Int. Union,* 180 F.Supp. 778, 781 (D.R.I.1960). This Court may therefore consider not only the pleadings but make any necessary findings based upon the affidavits and transcripts of depositions presented by the parties to decide the jurisdictional question.

The events that form the basis of this action date back to October 1979, when Carl Chambers, a songwriter, composed a musical composition called "Close Enough to Perfect" ("Close Enough"). The Amended Complaint alleges that on May 19, 1981, the plaintiff, Fred V. Peay, Jr., acquired this composition from Chambers pursuant to a "Single Song Publishing Contract" and by an Assignment of Copyright executed on the same date. Plaintiff alleges that he took this transfer of copyright in good faith on the basis of a binding promise to pay royalties to Chambers and without notice of any prior transfer. The plaintiff registered his claim to copyright in the composition on July 9, 1981 and recorded the Assignment of Copyright with the Register of Copy-

rights on August 14, 1981. On September 15, 1981, the plaintiff filed a "Publisher Clearance Form" for the song with Broadcast Music, Inc. (BMI), a performing rights society.

On the preceding day, September 14, 1981, the plaintiff had a discussion with the defendant, Larry Morton (Morton), who with defendant Ann Morton is doing business as the defendant corporation, Accredit Music, concerning the matter that seems to be the crux of the controversy: Morton indicated to Peay that Accredit Music owned four of Carl Chambers' songs, including "Close Enough"; Peay responded that Chip Peay Music owned the exclusive rights to "Close Enough" and fourteen other Chambers songs. Complaint, Exhibit 5.

Count I of the Amended Complaint alleges that the Mortons and the remaining two defendants, Russ Allison and David Hall, entered into an agreement in contravention of the plaintiff's exclusive rights in the copyright to "Close Enough" by representing themselves to be the sole and exclusive owners of all such rights and by "pitching"[1] the song to Harold Shedd, co-producer of the popular country music artists known as Alabama. The complaint alleges that the defendants thereby authorized Shedd and RCA Records to record a performance of "Close Enough" by Alabama in deliberate infringement of plaintiff's rights. Although the complaint contains no averment as to precisely when these events took place, it expressly states that the date of the infringement was after September 15, 1981. Amended Complaint, ¶ 12. Plaintiff further alleges that at the end of February 1982 RCA Records released Alabama's "Mountain Music" album, which included "Close Enough", and designated the defendant Accredit Music as publisher and owner of the song. On the basis of these alleged facts, plaintiff seeks a permanent injunction restraining the defendants from exploiting the composition, and any damages resulting from the alleged infringement.

---

**1.** A common term in the record industry, "pitching" is the act of playing a song for recording artists or record producers and man-

ufacturers in order to interest them in performing and producing the work.

In Count II, plaintiff asserts that the foregoing allegations evidence an actual controversy concerning the proper ownership of the composition and therefore urges that this Court enter a declaratory judgment to resolve the ownership dispute.

The complaint reveals that there is no diversity of citizenship. To determine whether federal jurisdiction is present under 28 U.S.C. § 1338 the Court has considered the following in addition to the allegations of the complaint.

Defendant Morton claims that in February 1980, two years prior to the release of the "Mountain Music" album, he and Chambers entered into an oral agreement to coproduce "Close Enough" and three other Chambers songs and to use the finished performances to "shop for a deal". Morton Affidavit. Morton claims that Chambers agreed to assign to Accredit Music all rights in the copyrights to the songs if Morton would pay for production and promotion of the musical tracks for the songs. It is undisputed that over the course of the following year, Morton incurred expenses in the production and promotion of the four songs, one of which was commercially released, by agreement with Chambers, on Morton's record label to radio stations nationwide. Morton Affidavit and Schedule B thereto. It is further uncontroverted that on January 22, 1981 Chambers sought to obtain performance rights from BMI and that in executing the requisite application, Chambers listed three songs, including "Close Enough", as published by Accredit Music. Morton Affidavit, Schedule B. Morton claims that he understood that Chambers had thereby made a written acknowledgement of their oral agreement that Accredit Music would be the publisher and copyright owner of "Close Enough". He thereafter sent Chambers songwriter contracts and a recording contract for the songs, but Chambers never executed them.

As regards the "pitching" of "Close Enough" to Alabama's co-producer, Shedd, it appears that pursuant to an oral agreement between the defendants (Morton Deposition at 96), defendant Russ Allison had indeed provided Shedd with a copy of the "demo tape" in February of 1981 and indicated that Accredit Music and Raindance Music, a company formed by defendants Allison and Hall, were the publishers. Morton Deposition at 96; Hall Deposition at 16, 21. The defendants apparently heard nothing from Shedd until August of 1981, when Hall learned that Alabama had already "cut the song". Hall Deposition at 20–21; Morton Affidavit.

Morton claims that in the Fall of 1981, he learned that Chambers had signed songwriter agreements with Chip Peay. He then suspended all plans for promotion of the compositions, and has not been reimbursed by Chambers for the expenses he had already incurred. Morton Affidavit. It is undisputed that Morton never executed any mechanical license on behalf of Accredit Music for "Close Enough", and he claims that he never authorized any license for manufacture and sale of any performance of the song by Alabama. Morton Affidavit.

It is in any event clear that Alabama and RCA Records never obtained the licenses required under the copyright laws before producing and releasing their recording of "Close Enough".

Somewhat ironically, however, it appears that during the spring and summer of 1981, the plaintiff independently sought to interest Alabama in producing a recording of "Close Enough", and indeed, upon initially hearing that Alabama had produced a recording, believed that he had obtained it himself. Peay Deposition at 30. He testified at his deposition that in March or April of 1981, before the Single Song Publishers Contract between Peay and Chambers was executed, he himself had pitched "Close Enough" to Dale Morris, Alabama's manager. Peay Deposition at 24–27. Peay further testified that he had been contacted by Morris in July of 1981 and was led to believe that, although the song had not yet been recorded, if he would offer Alabama a percentage of copyright ownership in the song, Alabama would include the song on its "Mountain Music" album and guarantee release of a single recording of "Close

Enough" in addition. Peay Deposition at 37. Peay soon thereafter sent Morris a letter confirming that he understood that they had reached an agreement whereby "Close Enough" would be released on the "Mountain Music" album and as an "A-side single", and Alabama would receive fifty percent of the copyright ownership in the song. Peay Deposition at 38. It was apparently not until Peay later learned that RCA Records would be releasing the album listing Accredit Music as publisher that he learned of the defendants' involvement in pitching the song. Peay Deposition at 30.

On January 26, 1982, plaintiff's attorney wrote to RCA Records advising it that contrary to the label credits on the soon-to-be released Alabama album, Chip Peay Music was sole owner of the copyright in "Close Enough" and that he understood no mechanical license had ever been issued for the song. Morton Affidavit, Collective Exhibit 2, at 27. The letter states, in addition, that Peay and Alabama's personal manager had reached an agreement whereby "the song would be included on the next album and that if released as an A-side single, Mr. Peay would split publishing with Alabama's publishing company. Apparently, Messrs. Hall and Allison had pitched the song to Harold Shedd, a producer on the album, and he denoted them as publisher when he submitted label copy". Morton Affidavit, Collective Exhibit 2, at 27.

In April of 1982, after the album was released, RCA Records sought synchronization and mechanical licenses for "Close Enough", apparently leaving it to plaintiff's and defendants' counsel to determine how the publisher should be identified. Morton Affidavit, Collective Exhibit 2, at 23–25. BMI thereafter decided to withhold payment of publisher royalties earned by "Close Enough" pending the outcome of this litigation. *Id.* at 21–22. Finally, the parties stipulated that monies generated by users of "Close Enough" would be held in escrow until further agreement or order.

The prerequisite for federal jurisdiction is that this suit arises under the copyright law. 28 U.S.C. § 1338. "A suit arises un-der the law that creates the cause of action". *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916) (Holmes, J.). As the courts have repeatedly observed, however, the foregoing Holmes "creation test" is "more useful for inclusion than for the exclusion [of cases]" for which it was intended. *Smart v. First Federal S & L Ass'n of Detroit,* 500 F.Supp. 1147, 1153 (E.D.Mich.1980) (quoting *T.B. Harms v. Eliscu,* 339 F.2d 823, 827 (2d Cir.1964), *cert. denied,* 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965)). In this "murky" area of the law, the Court must look to the "essence of the plaintiff's claim". *Keith v. Scruggs,* 507 F.Supp. 968, 970 (S.D.N.Y. 1981). The oft-cited test formulated by Judge Friendly in *T.B. Harms,* 339 F.2d at 828 (emphasis supplied), is that

> an action "arises under" the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement . . . ., or asserts a claim requiring construction of the Act, . . ., or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim. *The general interest that copyrights, like all other forms of property, should be enjoyed by their true owner is not enough* to meet this last test.

 Simply because an action is predicated on rights derived from the Copyright Act does not mean that the action is one for copyright infringement, or one "arising under" the Copyright Act. 28 U.S.C. § 1338(a); *Nimmer on Copyright,* § 12.-01[A]. Jurisdiction lies with the state courts in an action to enforce contractual rights or to establish title to a work in statutory copyright. *Nimmer, supra,* § 12.-01[A]. Further, state jurisdiction is present even when disposition of such an action will require determination of questions of copyright law. *Id.* at 12–3, 12–4 (citing state cases). *See T.B. Harms Co.,* 339 F.2d at 828; *Elan Associates, Ltd. v. Quackenbush Music Ltd.,* 339 F.Supp. 461 (S.D.N.Y.1972).

Indeed even a well-pleaded "infringement claim will not invoke federal jurisdiction *when the claim is merely incidental to a primary dispute over copyright ownership under state law.*" *RX Data Corp. v. Dept. of Social Services*, 684 F.2d 192, 196 (2d Cir.1982) (emphasis added); *Simon & Flynn, Inc. v. Time, Inc.*, 513 F.2d 832 (2d Cir.1975) (per curiam); *Stepdesign, Inc. v. Research Media, Inc.*, 442 F.Supp. 32 (S.D. N.Y.1977); *Luckett v. Delpark, Inc.*, 270 U.S. 496, 502–03, 46 S.Ct. 397, 399, 70 L.Ed. 703 (1926) (patent law).

The jurisdictional question is most troublesome in a case, such as this, "of a hybrid nature" in which the plaintiff's claims are infringement of his rights under the copyright laws, "but in which at least a preliminary question arises unrelated to the copyright laws". *Muse v. Mellin*, 212 F.Supp. 315, 316 (S.D.N.Y.1962), *aff'd per curiam*, 339 F.2d 888 (2d Cir.1964) (citing *T.B. Harms*). In *Muse v. Mellin*, the plaintiff asserted a claim of ownership of the renewal right in a popular song based on an assignment executed by one of the authors of the song in 1931 to the plaintiff's predecessor in interest and on a "confirmatory" agreement of 1957. Defendants, however, claimed the same one-third interest in the renewal right under an agreement executed by the same author in 1951. The defendant performing rights society, ASCAP, was acting as stake holder of income earned by the song pending the court's determination of ownership. Plaintiffs claimed that their rights were infringed when ASCAP licensed the public performance of the song without their consent and, as in the instant case, they sought to obtain a declaratory judgment as to ownership, an injunction against defendants from infringing plaintiffs' rights in the renewal copyrights, and damages for infringement.

Finding that the "principal issue in this case is title", the *Muse* Court held:

This is simply a declaratory judgment action between one assignee against another assignee of the same one-third interest to determine the ownership of the elusive one-third interest. . . . The alle-

gation of infringement in this case must be construed as an allegation that the plaintiff, after his title to the copyright has been established, will seek relief from infringement. The *primary and controlling purpose* of the complaint is to secure an interpretation of the various assignments of the one-third interest. Of such suits the federal courts lack jurisdiction.

212 F.Supp. at 318 (emphasis added; citations omitted).

Similarly, in *Elan Associates, Ltd. v. Quackenbush Music, Ltd.*, 339 F.Supp. at 462, both the plaintiff and defendant claimed that they owned the copyright in seven songs composed by Carly Simon. Although the action was "cast in terms of infringement," the Court held that it lacked subject matter jurisdiction because the "principal and controlling issue" was who owned the copyrights. *Id. See also Simon & Flynn, Inc. v. Time, Inc.*, 513 F.2d at 833–834; *Rotardier v. Entertainment Company Music Group*, 518 F.Supp. 919 (S.D.N. Y.1981); *Keith v. Scruggs*, 507 F.Supp. at 971.

 These cases do not, of course, stand for the proposition that the federal courts are without jurisdiction to decide threshold questions concerning ownership in a copyright infringement action. Indeed, in any such action, ownership of a valid copyright and copying by the defendant are the two elements plaintiff necessarily must establish. *Topolos v. Caldewey*, 698 F.2d 991, 994 (9th Cir.1983); *Warner Bros, Inc. v. ABC, Inc.*, 654 F.2d 204, 207 (2d Cir.1981). However, federal jurisdiction may not be invoked "where the primary and controlling purpose of the complaint is to secure an interpretation of conflicting assignments" and "the only infringement alleged is prospective under a declaratory relief count" or is incidental to a claim of ownership, for example, through a reversion of rights by reason of the defendant's breach of contract; in such cases "the determination of state or federal jurisdiction may often turn on the ephemeral issue of plaintiff's 'primary and controlling' purpose." *Nimmer*,

*supra*, § 12.01[A] at 12–8, 12–8.1 (footnotes omitted).

Such is the case here. The complaint clearly presents as a central, if not the controlling, issue a dispute as to who owns the copyright in the song, "Close Enough". There is, for jurisdictional purposes, substantial evidence of conflicting assignments of the rights and interest in the song on the part of its composer. Certainly, a paramount purpose of the complaint, as plaintiff concedes, is to secure an interpretation of these conflicting assignments so as to establish the plaintiff as the proper owner of the copyright.

As to an allegation of infringement, the jurisdictional facts supporting such a claim are far from substantial or clear. The parties have argued over the question of whether the act of "pitching" a song constitutes a sufficiently public performance as to fall within the class of exclusive rights of the copyright owner under 17 U.S.C. § 106. This Court doubts whether the act of "pitching", without more, amounts to an infringement.[2] It is unnecessary to resolve the issue, however, because the amended complaint unequivocally states that the alleged infringement took place after September 15, 1981, and it is uncontroverted that the song was pitched to Alabama's producer in the Spring of 1981. Amended Complaint ¶ 12; Hall Deposition at 20–21; Morton Affidavit. The complaint therefore can only be construed to allege as the sole act of infringement the allegation that, representing themselves as owners of all rights in the song, "defendants *authorized* Shedd and RCA to record a performance of the composition by the group Alabama and to manufacture and release throughout the world records and tapes embodying the performance". Amended Complaint ¶¶ 15–17 (emphasis added). Even here, however, the undisputed facts as to the period during which the defendants made such representations and allegedly authorized the record production appear to be in conflict with the complaint's averment that the infringement occurred after September 15, 1981.

There are additional and more disturbing problems with this allegation of infringement. It has troubled this Court from the outset that the plaintiff has brought no infringement claim against third persons who figure centrally in this dispute, such as Alabama, Harold Shedd, Dale Morris, and RCA Records, even though they apparently made no effort to determine the true copyright owner or secure the proper licenses prior to their use of the composition. However, from the agreement reached, according to plaintiff's own deposition testimony and the letter of his counsel to RCA Records, between the plaintiff and Alabama's manager, it is evident that the plaintiff actually consented to the release of the album upon which he now bases his infringement claim against the defendants. If the unauthorized act itself on the part of the recording artists and their producers were noninfringing by reason of the plaintiff's consent to the use of the composition, it is difficult to see how those who in some way aided the primary actors could be found to have committed an infringement. *See Nimmer, supra,* § 8.05[C] (applying similar reasoning to the problem of home recording exemption). Further, it has been held that a complaint alleging that "the defendant has 'represented and asserted' that it has the right to use and authorize the use of the plaintiff's song . . . without an accompanying act or threatened act to implement the asserted right *is not sufficient to state a charge of threatened infringement* of the plaintiff's copyright." *Southern Music Publishing Co. v. C & C Films, Inc.,* 171 F.Supp. 832, 833 (S.D.N.Y. 1959) (emphasis added). Again, it appears that Alabama, its producers and RCA, not the defendants, implemented the asserted right and that the plaintiff, moreover, consented to release of the album they produced. One may well wonder what communi-

---

**2.** Moreover, the plaintiff's admission that he himself pitched "Close Enough" to Alabama's manager prior to execution by the composer of the agreements transferring ownership of the copyright in the song does little to strengthen his position that the similar act of defendants was in and of itself an infringement. Peay Deposition at 24–27.

cations took place between Alabama's producer, Shedd, and manager, Morris, regarding who should be designated publisher on the "Mountain Music" album. In any event, this Court finds it hard to perceive, for jurisdictional purposes, evidence of infringement by the defendants. *See T.B. Harms,* 339 F.2d at 825.

Construing the complaint liberally and as a whole, this Court cannot view the primary and controlling purpose of this action as the adjudication of a claimed copyright infringement. In *Rotardier v. Entertainment Company Music Group,* 518 F.Supp. 919 (S.D.N.Y.1981), the author of a musical composition claimed that the defendant music companies had infringed upon his exclusive ownership in the copyright by commercially exploiting the song after the copyright had, by virtue of the defendants' alleged breach of contract, reverted to the author. Stating that a "finding of copyright infringement would be *incidental* to the main purpose of this suit," 518 F.Supp. at 921 (emphasis supplied), the Court dismissed for lack of jurisdiction:

> Essentially, the claim in the instant case is to establish valid title to a copyright by attempting to show noncompliance with a contract. The mere fact that a controversy involves a copyright does not give rise to federal jurisdiction. Nor can plaintiff invoke federal jurisdiction by casting the claim in terms of copyright infringement.

*Id.* Of course, if the plaintiff in *Rotardier* ultimately proved its claim of ownership through automatic reversion it might follow that the alleged subsequent commercial exploitation by the defendants could amount to an infringement. For jurisdictional purposes, the infringement claim was nevertheless incidental to the dispute of title. Because of this primary and controlling purpose, the suit remained subject to state jurisdiction. *Accord Stepdesign, Inc. v. Research Media, Inc.,* 442 F.Supp. at 33–34

("any finding of infringement would be clearly incidental to the main purpose of plaintiff's suit which . . . seeks a declaratory judgment" establishing reversion of rights to plaintiff).

Like the claims of infringing commercial exploitation in *Rotardier, Stepdesign, Muse* and *Elan,* the determination of the rather dubious infringement claim in the instant case would incidentally and automatically follow, assuming *arguendo* that any such claim is in fact properly stated,[3] upon decision of the ownership question. That decision is not merely the threshold to a controlling question of infringement. Rather, the determination of ownership is, clearly, the principal purpose of the instant complaint.

In an attempt to distinguish *Muse v. Mellin* and the cases holding that the federal courts lack jurisdiction over actions that primarily seek the adjudication of conflicting assignments of copyrights, the plaintiff argues that the *T.B. Harms* test offers another basis for jurisdiction. Plaintiff argues that even if, like *Muse,* this case is viewed as primarily an ownership dispute, the Court nevertheless has jurisdiction because "the complaint . . . asserts a claim requiring construction of the Act." *T.B. Harms,* 339 F.2d at 828. The plaintiff argues that resolution of the instant dispute will involve the construction of two provisions of the Copyright Act, Section 204, which requires a written memorandum of transfer of copyright ownership, and Section 205(e), establishing priority between conflicting transfers. Plaintiff asserts that these provisions must be construed because, in response to the complaint, the defendants claim that they "have exercised ownership rights in and to this song based upon an alleged *oral* assignment of copyright from the composer and a subsequent 'memorandum' signed by him." Plaintiff's Brief in Opposition at 5.

---

**3.** The Court notes that the instant case may represent an instance where it is difficult to ascertain whether the complaint should be dismissed for want of subject matter jurisdiction or failure to state a claim upon which the federal court can grant relief. *See T.B. Harms,* 339 F.2d at 828–829; *Cresci v. Music Publishers Holding Co.,* 210 F.Supp. 253, 256 n. 2 (S.D.N.Y.1962). That problem, however, has no effect upon the disposition in this case.

■ Plaintiff's argument fatally ignores the long-established axiom that there can be no "arising under" jurisdiction unless the federal question is presented plainly on the face of his well-pleaded complaint. The Supreme Court

has repeatedly held that in order for a claim to arise "under the Constitution, laws, or treaties of the United States," "a right or immunity created by the Constitution or laws of the United States must be an element and an essential one, of the plaintiff's cause of action." *Gully v. First National Bank*, 299 U.S. 109, 112 [57 S.Ct. 96, 97, 81 L.Ed. 70] (1936). The federal questions "must be disclosed upon the face of the complaint, *unaided by the answer.*" Moreover, "the complaint itself will not avail as a basis for jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and *anticipates or replies to a probable defense.*" *Gully, supra*, at 113 [57 S.Ct. at 98].

*Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127–128, 94 S.Ct. 1002, 1003–1004, 39 L.Ed.2d 209 (1974) (citations omitted) (emphasis added).

The case Judge Friendly had in mind in formulating his test for jurisdiction based on construction of the Act was *De Sylva v. Ballentine*, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956), in which the complaint presented, on its face, a claim that the illegitimate child of the author shared in the right of renewal of copyright under a particular section of the statute. *See T.B. Harms*, 339 F.2d at 827–828. Similarly, the Court in *Hill & Range Songs, Inc. v. Fred Rose Music, Inc.*, 58 F.R.D. 185, 187–188 (S.D.N.Y.1972), citing *De Sylva*, held that it had jurisdiction because a "primary issue" raised in the complaint was whether the assignee of the renewal copyrights was a "widow" within the meaning of the Copyright Act. As for *Rossiter v. Vogel*, 134 F.2d 908 (2d Cir.1943), relied upon by the plaintiff, the Court in *T.B. Harms*, raised doubts as to whether the assumption of jurisdiction in that case is entitled to much weight for purposes of "arising under" jurisdiction since the complaint disclosed diverse citizenship. 339 F.2d at 828.

In any event, it is clear that construction of the Act in the instant case would become necessary only by reason of the defenses raised to the plaintiff's claim of ownership. The plaintiff's claimed basis for jurisdiction, that the Act must be construed to resolve the defendants' claim regarding their allegedly prior written memorandum of transfer, remains defensive in nature. In *Keith v. Scruggs*, 507 F.Supp. at 970, the Court held that no federal question sufficient for jurisdiction appeared on the face of the complaint; the complaint sought, rather, to establish title. As in the instant case, the plaintiff attempted to distinguish the cases holding that such actions do not "arise under" the copyright laws

by listing various issues in his brief that may require construction of the copyright laws. However, although plaintiff lists these potential issues in his brief, he does not allege the facts underlying them in his complaint as required by *Phillips Petroleum Co. v. Texaco, Inc.* . . . That questions of copyright law may arise does not *ipso facto* create federal jurisdiction. Moreover, to the extent that these issues anticipate possible defenses (such as the fact that Scruggs claims Keith was paid for his contribution, and was, therefore, a worker for hire [within the meaning of the Act] ), they cannot be relied upon to establish a federal question.

507 F.Supp. 970 (citations omitted). Clearly, in the instant case, even if the complaint itself set forth the underlying facts regarding the defendants' claimed prior transfer from Chambers, the potential issues thus raised would, as in *Keith*, merely be anticipatory of defenses.

■ This Court must conclude that the "essence of the plaintiff's claim" is a declaratory judgment action to establish title to a work in statutory copyright. *Keith v. Scruggs*, 507 F.Supp. at 970. Over such suits jurisdiction lies with the state courts. *Muse v. Mellin*, 212 F.Supp. at 318; Nimmer, *supra*, § 12.01[A], at 12–3, 12–4. The mere fact that, in the course of this litigation, the federal copyright laws may of

necessity be interpreted or applied does not suffice for federal question jurisdiction. *Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Dorn v. Dorn's Transp., Inc.,* 562 F.Supp. 822, 825 (S.D.N.Y.1983).

> To sanction suits for declaratory relief as within the jurisdiction of the District Courts merely because ... artful pleading anticipates a defense of federal law would contravene the whole trend of jurisdictional legislation by Congress, disregard the effective functioning of the federal judicial system and distort the limited procedural purpose of the Declaratory Judgment Act.

*Home Federal S & L Ass'n v. Ins. Dept. of Iowa,* 571 F.2d 423, 426 (8th Cir.1978). *See also Smart v. First Federal S & L Ass'n of Detroit,* 500 F.Supp. at 1152 (Congress expressly declined to expand federal jurisdiction to allow action whenever a "substantial defense" arising under the Constitution, laws or treaties of the United States was asserted). The appropriate state courts, to whom "Congress left a considerable residue of power" to "pass on 'copyright questions'", including "questions arising in contract and title disputes," *Cresci v. Music Publishers Holding Corp.,* 210 F.Supp. at 260 (quoting *Harrington v. Mure,* 186 F.Supp. 655, 658 (S.D.N.Y.1960)), are competent and have the power to pass upon any questions that may arise in resolving this litigation. *See Nimmer, supra,* § 12.01[A] at 12–3.

For the foregoing reasons, the defendants' motion to dismiss the amended complaint for want of subject matter jurisdiction is granted without prejudice to the plaintiff's right to maintain an action in the appropriate forum. Because federal jurisdiction is lacking, this Court does not reach the defendants' motion to dismiss for failure to join an indispensable party. An appropriate ORDER will be entered.