IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 3, 2023

## PUBLIC.RESOURCE.ORG, ET AL. v. MATTHEW BENDER & COMPANY, INC., ET AL.

### Appeal from the Chancery Court for Davidson County
No. 22-1025-III     Ellen Hobbs Lyle, Chancellor

_____

### No. M2022-01260-COA-R3-CV

_____

This appeal concerns a petition to access public records filed against a private entity. David L. Hudson, Jr. ("Hudson") and Public.Resource.Org filed a petition against Matthew Bender & Company, Inc., a division of LexisNexis Group ("Lexis"), in the Chancery Court for Davidson County ("the Trial Court") pursuant to the Tennessee Public Records Act ("the TPRA") seeking access to and a copy of the complete and current electronic version of the Tennessee Code Annotated ("the TCA.").[1] The Tennessee Code Commission ("the Commission") intervened on Lexis's side in part to protect the state's alleged copyright interest in the TCA. The Trial Court held that the TCA is exempt from disclosure because Tennessee law provides a separate avenue for publication of the TCA. In addition to its dispositive ruling, the Trial Court held that Lexis operates as the functional equivalent of a governmental entity, and that the TCA is disqualified from copyright protection. Hudson appeals. Lexis and the Commission raise issues as well. We hold, *inter alia*, that Lexis is a private company performing specific services for the state on a contractual basis. It has not assumed responsibility for public functions to such an extent as to become the functional equivalent of a governmental entity. We modify the Trial Court's judgment in that respect. Otherwise, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which CARMA DENNIS MCGEE, J., joined. W. NEAL MCBRAYER, J., filed a separate concurring opinion.

_____

[1] The record reflects that Public.Resource.Org is an organization based outside of Tennessee and thus lacks standing to file a petition under the TPRA. *See Scripps Media, Inc. v. Tenn. Dep't of Mental Health & Substance Abuse Servs.*, 614 S.W.3d 700, 704 (Tenn. Ct. App. 2019); Tenn. Code Ann. § 10-7-503(a)(2)(A); Tenn. Code Ann. § 10-7-505(a). We entered an order directing Public.Resource.Org to show cause as to why it should not be dismissed for lack of standing. It filed a response acknowledging that it is not in a position to show cause. Therefore, we entered an order dismissing Public.Resource.Org.

Lucian T. Pera, Memphis, Tennessee, and Joshua Counts Cumby, Nashville, Tennessee, for the appellant, David L. Hudson, Jr.

Thomas H. Lee, Nashville, Tennessee, and John M. Bowler, Atlanta, Georgia, for the appellee, Matthew Bender & Company, Inc., a division of LexisNexis Group.

Jonathan Skrmetti, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; James P. Urban, Deputy Attorney General; and Kevin M. Kreutz, Deputy Attorney General, for the appellee, the Tennessee Code Commission.

## OPINION

## Background

Hudson filed a petition against Lexis in the Trial Court pursuant to the TPRA, Tenn. Code Ann. §§ 10-7-503 and 10-7-505, seeking access to and a copy of the complete and current electronic version of the TCA and to obtain judicial review of the actions of Lexis in denying Hudson's request for the material. It was and remains Hudson's contention that the TCA is a public record that must be disclosed under the TPRA. The Commission moved to intervene on Lexis's side in part to protect the state's alleged copyright interest in the TCA. In its memorandum of law in support of its motion to intervene, the Commission asserted that "the State is the owner of the copyright rights in the annotations to the TCA. As such, the TCA is exempt from disclosure under the TPRA." The Commission was allowed to intervene.

The Tennessee Code is a compilation of the statutory laws of Tennessee. The TCA includes the Tennessee Code but also, among other things, annotations and references to caselaw interpreting the code. The TCA is the "official compilation of the statutes, codes and session laws of the state of Tennessee of a public and general nature. . . ." Tenn. Code Ann. § 1-1-105(a). Furthermore, "[t]he text of the statutes, codes and code supplements (but not the annotations, footnotes and other editorial matter) appearing in the printed copies of the compilation, containing a copy of the commission's certificate of approval, shall constitute prima facie evidence of the statutory law of this state. . . ." Tenn. Code Ann. § 1-1-111(b) (West eff. July 10, 2014).

The Commission, which was created by the General Assembly in 1953, produces and publishes the TCA. The Commission has as its members the Chief Justice of the Tennessee Supreme Court, the Tennessee Attorney General and Reporter, a Director of the Office of Legal Services for the General Assembly, and two other members appointed by

the Chief Justice. Tenn. Code Ann. § 1-1-101 (West eff. March 17, 2016). The Commission is authorized to do as follows:

(a) The Tennessee code commission is hereby authorized and directed to formulate and supervise the execution of plans for the compilation, arrangement, classification, annotation, editing, indexing, printing, binding, publication, sale, distribution and the performance of all other acts necessary for the publication of an official compilation of the statutes, codes and session laws of the state of Tennessee of a public and general nature, now existing and to be enacted in the future, including an electronically searchable database of such code, which official compilation shall be known as "Tennessee Code Annotated."

(b) "Publication," as used in this chapter, includes the necessary actions by whatever means and in whatever form for development of a Tennessee Code database.

Tenn. Code Ann. § 1-1-105. In addition:

(a) The Tennessee code commission has full power and authority on behalf of the state of Tennessee to perform all acts and to negotiate and enter into all contracts necessary for and expedient to the successful production and publication of a revised compilation of the statutory laws of Tennessee, including the power and authority to enter into contracts with a law book publisher for the editing, compiling, annotating, indexing, printing, binding, publication, sale and distribution of the revised compilation and the performance and execution of all other publication plans formulated by the commission.

(b) Nothing in this chapter shall be construed to render invalid or impair the obligations of any contract previously entered into by the commission for the purposes set forth in this section or with a suitable contractor for an electronically searchable database of such code.

Tenn. Code Ann. § 1-1-106. Further still:

(a) Any contract with a law book publisher for the purposes referred to in §§ 1-1-105 and 1-1-106 shall prescribe the specifications for the publication of the revised compilation, including the size of type to be used in the text of the statutes and the annotations, the grade and weight of the paper to be used, the size of the volumes, appropriate provisions for the insertion of pocket

supplements and the publication of replacement volumes, the price at which Tennessee Code Annotated shall be sold in Tennessee when originally published, and such other provisions as are necessary for the full performance of the publication plans formulated by the commission.

(b) The price at which pocket supplements and replacement volumes are to be sold from time to time in Tennessee shall be controlled by the commission in such contracts as it may, from time to time, in its discretion execute.

Tenn. Code Ann. § 1-1-107.

The Commission contracts with Lexis to edit the TCA and support the distribution process. Under the contract, the Commission has the final say over the content of the TCA. The specifications are precise. The Commission also sets the price at which Lexis sells the TCA, and the Commission compensates Lexis by allowing it to keep the proceeds from its sale of the TCA.

In August 2022, the Trial Court entered an order dismissing Hudson's petition. The Trial Court held, among other things, that "[Lexis] is not required to provide access to the Petitioners of Tennessee Code Annotated because the publication fits within an exception under the Public Records Act, and the Petition in this case must be dismissed." The Trial Court reasoned that other provisions of Tennessee law govern access to the TCA, and thus the TCA is exempt from disclosure. This ruling was dispositive. However, the Trial Court also ruled for the sake of completeness that Lexis is the functional equivalent of a governmental entity, and that the TCA is disqualified from copyright protection. Hudson timely appealed to this Court.

## Discussion

The parties address albeit to different ends the same three issues, which we restate slightly as follows: 1) whether the Trial Court erred in concluding that the TCA is disqualified from copyright protection; 2) whether the Trial Court erred in concluding that Lexis is the functional equivalent of a governmental entity; and 3) whether the Trial Court erred in concluding that the TCA is exempt from disclosure under the TPRA.

We first address whether the Trial Court erred in concluding that the TCA is disqualified from copyright protection. Lexis and the Commission contend that the Trial Court erred by addressing the question at all. They state that determinations of copyright status are reserved for the federal courts. This implicates the Trial Court's subject matter jurisdiction. Whether subject matter jurisdiction exists is a question of law reviewed de novo without a presumption of correctness. *Northland Ins. Co. v. State*, 33 S.W.3d 727,

729 (Tenn. 2000) (citation omitted).  The Commission cites a case from this Court which states:

> The Copyright Act is unusually broad in its assertion of federal authority. Rather than sharing jurisdiction with the state courts as is normally the case, the statute expressly withdraws from the state courts any jurisdiction to enforce the provisions of the Act and converts all state common or statutory law "within the general scope of copyright" into federal law to be uniformly applied throughout the nation.

*Wells v. Chattanooga Bakery, Inc.*, 448 S.W.3d 381, 387 (Tenn. Ct. App. 2014) (quoting *Ritchie v. Williams*, 395 F.3d 283, 286 (6th Cir. 2005)).  However, the Commission also acknowledges an opinion by this Court in which we stated that just because an action is predicated on rights derived from the Copyright Act, that action is not necessarily one for copyright infringement or one that arises under the Copyright Act.  *See Minor Miracle Prods., LLC v. Starkey*, No. M2011-00072-COA-R3-CV, 2012 WL 112593, at *5 (Tenn. Ct. App. Jan. 12, 2012), *no appl. perm. appeal filed* (citing *Peay v. Morton*, 571 F.Supp. 108, 112-13 (M.D. Tenn. 1983)).  While state courts may not rule definitively on copyright status, a state court does not have to utterly avoid any questions touching upon copyright. We note that the Commission intervened in this case in part to protect the state's alleged copyright interest in the TCA.  It would be a curious thing if neither the Trial Court nor this Court could address the state's purported copyright interest when that purported interest was asserted in opposition to the TPRA petition.[2]  Insofar as the Trial Court addressed the TCA's copyright eligibility for purposes of ruling on the TPRA petition, the Trial Court did not exceed its authority.

On the substance of the copyright issue, the Commission argues that the state has a valid copyright interest in the TCA.  Hudson and the Commission discuss *Georgia v. Public.Resource.Org, Inc.*, 590 U.S. ——, 140 S.Ct. 1498, 206 L.Ed.2d 732 (2020), a case by the Supreme Court of the United States addressing whether Georgia's code annotations are eligible for copyright protection.  In *Georgia*, Public.Resource.Org posted the Official Code of Georgia Annotated online where it could be downloaded without charge.  *Id*. at 1505.  Georgia's Code Revision Commission sued Public.Resource.Org for copyright infringement.  *Id*.  In the majority opinion authored by Chief Justice John G. Roberts, Jr., the Court ruled against copyright eligibility for the Georgia annotations.  *Id*. at 1506.  The Court, relying upon the government edicts doctrine, stated:

---

[2] We decline, however, to take judicial notice of certain correspondence which Hudson has attached to his reply brief purporting to show that the United States Copyright Office rejected Lexis's application to register the TCA for copyright protection.

We hold that the annotations in Georgia's Official Code are ineligible for copyright protection. . . . A careful examination of our government edicts precedents reveals a straightforward rule based on the identity of the author. Under the government edicts doctrine, judges—and, we now confirm, legislators—may not be considered the "authors" of the works they produce in the course of their official duties as judges and legislators. That rule applies regardless of whether a given material carries the force of law. And it applies to the annotations here because they are authored by an arm of the legislature in the course of its official duties.

*Georgia*, 140 S.Ct. at 1506.

The Commission raises several points to distinguish the facts of *Georgia* from those of the instant case, to wit: that the annotations in *Georgia* were authored by the Georgia legislature acting in its legislative capacity whereas no Tennessee legislator or jurist authored the TCA while carrying out a legislative or judicial function; that the Tennessee General Assembly does not control the Commission; that in contrast to Georgia, the Tennessee General Assembly does not vote to "merge" annotations with the Tennessee Code; that no court has construed the Commission as acting in a legislative capacity; and that the Commission lacks lawmaking authority. The Commission acknowledges that it was created by the General Assembly and that the General Assembly funds and staffs it. Notwithstanding that, according to the Commission, the Trial Court incorrectly relied on an overly simplistic finding that the Commission functions as an "arm" of the legislature. The Commission says that instead it is "a civic or governmental body vested with governmental authority to act on behalf of the State," not a legislative body.

While the procedures used by Georgia vis-à-vis its code annotations and those used by Tennessee are not identical, the distinctions are immaterial as to the issue before us. The U.S. Supreme Court in *Georgia* was sweeping in its analysis of the government edicts doctrine. That analysis yields the same result in the appeal at bar. The Commission is, indeed, an "arm" of the legislature. It could hardly be other. If it is a "civic" or "governmental body," it is one created by the legislature for producing the TCA, a distinctly legislative goal. The Commission's proffered distinctions between the facts of this case and those of *Georgia* are overwhelmed by the breadth of the Supreme Court's holding. As applied here, the Commission, which is an arm of the General Assembly, produces the TCA (with the contracted-for assistance of Lexis) in the course of its official duties.

The *Georgia* Court noted that, while "Georgia minimizes the OCGA annotations as non-binding and non-authoritative", "that description undersells their practical significance." 140 S.Ct. at 1512. The Court contrasted "economy-class" readers and "first-

class" readers—i.e., the former having access to only the bare code, and the latter with the benefit of crucial added context. *Id.* That applies just as well to the TCA. The TCA is the definitive version of Tennessee statutory law, which courts almost always cite to. The facts of *Georgia* are analogous to the case at bar in every meaningful respect. We do not presume to bind federal courts as to the TCA's eligibility for copyright protection, but we hold for purposes of Hudson's TPRA petition that the TCA is ineligible for copyright protection. We affirm the Trial Court on this issue.

Our determination that the TCA is ineligible for copyright protection is not dispositive. This remains a public records case. More precisely, it is an effort by Hudson to access records held by a private entity, Lexis, by means of the TPRA. In order to achieve that, he must vindicate his theory that Lexis, in helping the Commission produce the TCA, operates as the functional equivalent of a governmental entity. Otherwise, as a private entity, Lexis is not subject to the TPRA. We therefore address whether the Trial Court erred in concluding that Lexis is the functional equivalent of a governmental entity. This Court has discussed the TPRA thusly:

> The Tennessee Supreme Court has characterized the TPRA as "an all encompassing legislative attempt to cover all printed matter created or received by government in its official capacity." *Griffin v. City of Knoxville*, 821 S.W.2d 921, 923 (Tenn. 1991) (citing *Bd. of Ed. v. Memphis Publ'g Co.*, 585 S.W.2d 629, 631 (Tenn. App. 1979)). It has opined that the TPRA's broad legislative mandate "require[s] disclosure of government records even when there are significant countervailing considerations." *Gautreaux v. Internal Medicine Educ. Found.*, 336 S.W.3d 526, 529 [(Tenn. 2011)] (citing *Memphis Publ'g Co. v. City of Memphis*, 871 S.W.2d 681, 684 (Tenn. 1994)). The TPRA requires the courts to construe the statute broadly "so as to give the fullest possible public access to public records." Tenn. Code Ann. § 10-7-505(d). Accordingly, there is a "presumption of openness" under the TPRA, "favoring disclosure of governmental records." *Schneider v. City of Jackson*, 226 S.W.3d 332, 340 (Tenn. 2007) (citing *see State v. Cawood*, 134 S.W.3d 159, 165 (Tenn. 2004); *Tennessean v. Elec. Power Bd.*, 979 S.W.2d 297, 305 (Tenn. 1998); *Arnold v. City of Chattanooga*, 19 S.W.3d 779, 785 (Tenn. Ct. App. 1999)).

> Notwithstanding the presumption of openness, in the interest of public policy the General Assembly has provided specific explicit exemptions from disclosure contained in the TPRA itself. It has also "acknowledged and validated both explicit and implicit exceptions from disclosure found elsewhere in state law." *Swift v. Campbell*, 159 S.W.3d 565, 571 (Tenn. Ct. App. 2004). In an action filed for review of the denial of access to a record

by a governmental entity, the governmental entity carries the burden of proof to justify nondisclosure by a preponderance of the evidence. *Schneider*, 226 S.W.3d at 339 (citing Tenn. Code Ann. § 10-7-505(c)).

*Patterson v. Convention Ctr. Auth.*, 421 S.W.3d 597, 606-07 (Tenn. Ct. App. 2013).

With regard to when a private entity acts as the functional equivalent of a governmental entity, the Tennessee Supreme Court has interpreted records made or received in connection with the transaction of official business as inclusive of "those records in the hands of any private entity which operates as the functional equivalent of a governmental agency." *Memphis Publ'g Co. v. Cherokee Children & Family Servs., Inc.*, 87 S.W.3d 67, 79 (Tenn. 2002) (footnote omitted). In articulating the test for functional equivalence, our Supreme Court explained:

> In making this determination, we look to the totality of the circumstances in each given case, and no single factor will be dispositive. The cornerstone of this analysis, of course, is whether and to what extent the entity performs a governmental or public function, for we intend by our holding to ensure that a governmental agency cannot, intentionally or unintentionally, avoid its disclosure obligations under the Act by contractually delegating its responsibilities to a private entity. Beyond this consideration, additional factors relevant to the analysis include, but are not limited to, (1) the level of government funding of the entity; (2) the extent of government involvement with, regulation of, or control over the entity; and (3) whether the entity was created by an act of the legislature or previously determined by law to be open to public access.

> We caution that our holding clearly is not intended to allow public access to the records of every private entity which provides any specific, contracted-for services to governmental agencies. A private business does not open its records to public scrutiny merely by doing business with, or performing services on behalf of, state or municipal government. But when an entity assumes responsibility for providing public functions to such an extent that it becomes the functional equivalent of a governmental agency, the Tennessee Public Records Act guarantees that the entity is held accountable to the public for its performance of those functions.

*Cherokee*, 87 S.W.3d at 79.

The 'cornerstone' question of this analysis is whether and to what extent Lexis performs a governmental or public function. Hudson argues that Lexis does perform such

a role. He cites the fact that every citizen is presumed to know the law. He continues: "The law cannot be the law without being published, and thus publication of the law is a necessary and integral part of the government function of law-making." Hudson submits that the Commission has "complete control and supervision over Lexis. . . ." However, we disagree with Hudson as to the nature and implications of this control. The control exercised by the Commission is over the product, not Lexis itself. It is akin to the state demanding certain exacting specifications in road construction or any other project. If the state were dissatisfied, it could contract with another vendor. In any event, Lexis itself is not under state control. It is simply performing a carefully regulated service for the state. That the product at issue happens to be a compilation of the official statutory law of the state makes no difference to the fact that Lexis is still providing a specific service and not acting as a governmental entity. The Commission has the ultimate say over the TCA's content. Lexis is not a stand-in for government; it is just performing a contracted-for job within tightly specified parameters.

Hudson cites several cases, including *Allen v. Day*, 213 S.W.3d 244 (Tenn. Ct. App. 2006), in support of his argument that Lexis is the functional equivalent of a governmental entity. In *Allen*, this Court held that a private entity managing day-to-day operations at a public arena was the functional equivalent of a governmental entity. *Id.* at 246, 261. Importantly, in that case, the private entity "participate[d] in making binding governmental decisions regarding the management of the Arena[.]" *Id.* at 256. Here, the Commission has the final say on the TCA's contents. Lexis just helps implement the process. Other examples of functional equivalence cited by Hudson relating to education and prisons, for instance, implicate areas of traditional government intervention. The present matter is distinct. While the state certainly has always been in the law-making business, it has not traditionally been in the self-publishing business. Thus, we conclude that under the main *Cherokee* factor, Lexis does not perform a governmental function. Additionally, the Tennessee Supreme Court in *Cherokee* clarified that the rationale underpinning the functional equivalence doctrine is to ensure that the state does not avoid disclosure by delegating to a private entity. 87 S.W.3d at 79. Here, the state is not avoiding disclosure of the TCA through its contractual relationship with Lexis. On the contrary, the state contracts with Lexis to produce and publish the TCA, not to hide it.

The remaining *Cherokee* factors likewise do not support a finding of functional equivalence. Lexis is not controlled by the state. As discussed above, it simply adheres to stringent specifications in performing a contracted-for service to the state. Lexis also is not funded by the state. Finally, Lexis was not created by the General Assembly. The *Cherokee* factors weigh strongly against a finding of functional equivalence as to Lexis. We hold that, under the totality of the circumstances, Lexis does not operate as the functional equivalent of a governmental entity simply by virtue of its specific, contracted-

for services for the state in connection with publishing the TCA. We modify the Trial Court's judgment to that extent.

Our conclusion that Lexis is not the functional equivalent of a governmental entity means that it is not subject to the TPRA. However, in the event that we are wrong about that, we proceed to consider whether the Trial Court erred in concluding that the TCA is exempt from disclosure under the TPRA. The TPRA states, as relevant:

> (a)(1) As used in this part and title 8, chapter 4, part 6:
> (A) "Public record or records" or "state record or records":
> (i) Means all documents, papers, letters, maps, books, photographs, microfilms, electronic data processing files and output, films, sound recordings, or other material, regardless of physical form or characteristics, made or received pursuant to law or ordinance or in connection with the transaction of official business by any governmental entity; and
>
> ***
>
> (2)(A) All state, county and municipal records shall, at all times during business hours, which for public hospitals shall be during the business hours of their administrative offices, be open for personal inspection by any citizen of this state, and those in charge of the records shall not refuse such right of inspection to any citizen, <u>unless otherwise provided by state law</u>.
>
> ***
>
> (7)(A)(i) A governmental entity shall not require a written request or assess a charge to view a public record <u>unless otherwise required by law</u>. Requests to view public records may be submitted in person or by telephone, fax, mail, or email if the governmental entity uses such means of communication to transact official business, or via internet portal if the governmental entity maintains an internet portal that is used for accepting public records requests.

Tenn. Code Ann. § 10-7-503 (West July 1, 2022 to April 16, 2023) (emphasis added).

Lexis argues that the "otherwise" clauses apply here. To this end, it cites a number of statutes, including: Tenn. Code Ann. § 1-1-105(a); Tenn. Code Ann. § 1-1-106(a); and Tenn. Code Ann. § 1-1-113(b) ("The commission shall not be authorized to subsidize the publication of the code out of public funds, but shall require that the cost of publication be borne by the publisher, and the publisher shall be required to depend for compensation upon the proceeds of the sale of the publication."). Lexis also cites Tenn. Code Ann. § 3-

-10-

10-108(d) ("If public information is stored in a computer-readable form, the committee has exclusive authority to determine the form in which the information will be reproduced for the requestor of the information; provided, that the reproduction, publication, and sale of Tennessee Code Annotated in any form, in whole or in part, shall be pursuant to the provisions of title 1, chapter 1. If access to such public information is also available in printed form, it need not be provided in an electronic readable form."). According to Lexis, Tennessee law provides an exclusive path to accessing the TCA, and the TPRA is not the means to do it. In response, Hudson says that Lexis and the Commission cannot establish an exemption from disclosure for the TCA by pointing to a "grab bag" of statutes that merely mention the Commission or the TCA.

This issue involves statutory interpretation. Our Supreme Court has given guidance with regard to interpreting statutes, stating:

> Statutory interpretation and the application of a statute to the facts of a case involve questions of law and are reviewed under a de novo standard of review with no presumption of correctness afforded to the trial court. *Tenn. Dep't of Corr. v. Pressley*, 528 S.W.3d 506, 512 (Tenn. 2017); *Arden v. Kozawa*, 466 S.W.3d 758, 764 (Tenn. 2015). We thus independently review the relevant provisions of the Charter without any deference to the interpretations of the Commission or the trial court. *See Pressley*, 528 S.W.3d at 512.

> The overriding purpose of a court in construing a statute is to ascertain and effectuate the legislative intent, without either expanding or contracting the statute's intended scope. *Ray v. Madison Cnty., Tenn.*, 536 S.W.3d 824, 831 (Tenn. 2017); *Pressley*, 528 S.W.3d at 512. Legislative intent is first and foremost reflected in the language of the statute. *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010). "We presume that the Legislature intended each word in a statute to have a specific purpose and meaning." *Arden*, 466 S.W.3d at 764. The words used in a statute are to be given their natural and ordinary meaning, and, because "words are known by the company they keep," we construe them in the context in which they appear and in light of the general purpose of the statute. *Lee Medical*, 312 S.W.3d at 526; *Ray*, 536 S.W.3d at 831. "We endeavor to construe statutes in a reasonable manner 'which avoids statutory conflict and provides for harmonious operation of the laws.' " *Ray*, 536 S.W.3d at 831 (citation omitted). When a statute's text is clear and unambiguous, we need look no further than the language of the statute itself. *Lee Medical*, 312 S.W.3d at 527. "We simply apply the plain meaning without complicating the task." *Pressley*, 528 S.W.3d at 513.

When, however, the language of a statute is ambiguous, we resort to rules of statutory construction and external sources in order to ascertain and give effect to the legislative intent. *Lee Medical*, 312 S.W.3d at 527; *Ray*, 536 S.W.3d at 832. These external sources may include the broader statutory scheme, the history and purpose of the legislation, public policy, historical facts preceding or contemporaneous with the enactment of the statute, and legislative history. *Lee Medical*, 312 S.W.3d at 527-28; *Ray*, 536 S.W.3d at 831-32. The language of a statute is ambiguous when it is subject to differing interpretations which yield contrary results. *In re Hogue*, 286 S.W.3d 890, 894 (Tenn. 2009). "This proposition does not mean that an ambiguity exists merely because the parties proffer different interpretations of the statute. A party cannot create an ambiguity by presenting a nonsensical or clearly erroneous interpretation of a statute." *Powers v. State*, 343 S.W.3d 36, 50 n.20 (Tenn. 2011).

*Wallace v. Metro. Gov't of Nashville and Davidson Cnty.*, 546 S.W.3d 47, 52-53 (Tenn. 2018) (footnotes omitted).

We agree with Hudson that no single statute cited by Lexis or the Commission contains an explicit exemption from disclosure for the TCA under the TPRA. Nevertheless, the law recognizes implicit exemptions, as well. *Patterson*, 421 S.W.3d at 606 (citation omitted). We look to the overall statutory mechanism for the production and sale of the TCA to determine whether title 1, chapter 1 of the TCA and other law serve as an exception to the TPRA's general requirement of disclosure. The only reasonable conclusion is that the General Assembly intended to contract with a publisher to produce and publish the TCA and then allow it to be sold by the publisher—not given away for free upon request. Hudson seeks free access to the TCA by means of a request for public records. This would circumvent the statutory scheme in place for producing and publishing the TCA. Such a result would undermine the state's practice of contracting with publishers like Lexis. On this, we are guided by the General Assembly's clear intent, not the underlying wisdom of the policy, which we do not pass judgment on. If one could obtain the TCA for free by making a public records request, few if any publishers would contract with the state to publish the TCA. Fewer consumers still would want to pay for the TCA if it were required to be given away for free upon request. Given that there is a statutory framework in place for the production and distribution of the TCA, requiring unfettered free access under the TPRA would negate this statutory approach. We construe statutes to effectuate rather than nullify law. We also construe statutes to harmonize the law wherever possible. We, therefore, hold that Tennessee law 'otherwise provides' the exclusive avenue for obtaining the TCA. Thus, the TCA is exempt from disclosure under the TPRA. We affirm the Trial Court on this issue.

In summary, we hold that for purposes of the TPRA, the TCA is ineligible for copyright protection under the U.S. Supreme Court decision in *Georgia v. Public.Resource.org, Inc*. We hold further that Lexis is not the functional equivalent of a governmental entity. Finally, we hold that if Lexis were the functional equivalent of a governmental entity, the TCA would be exempt from disclosure under the TPRA because Tennessee law otherwise provides a separate, exclusive avenue for obtaining the TCA. We affirm the Trial Court's judgment as modified.

## Conclusion

The judgment of the Trial Court is affirmed as modified, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, David L. Hudson, Jr., and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE