T. B. HARMS COMPANY, Plaintiff-Appellant,

v.

Edward ELISCU and Ross Jungnickel, Inc., Defendants-Appellees.

No. 93, Docket 28921.

United States Court of Appeals Second Circuit.

Argued Oct. 21, 1964.

Decided Dec. 23, 1964.

Gustave B. Garfield, New York City, for plaintiff-appellant.

Lewis A. Dreyer, New York City (Norma Hack, New York City, of counsel), for defendant-appellee Ross Jungnickel, Inc.

David Blasband, New York City (Linden & Deutsch, New York City), for defendant-appellee Edward Eliscu.

Before FRIENDLY, KAUFMAN and ANDERSON, Circuit Judges.

FRIENDLY, Circuit Judge:

■ A layman would doubtless be surprised to learn that an action wherein the purported sole owner of a copyright alleged that persons claiming partial ownership had recorded their claim in the Copyright Office and had warned his licensees against disregarding their interests was not one "arising under any Act of Congress relating to * * * copyrights" over which 28 U.S.C. § 1338 gives the federal courts exclusive jurisdiction. Yet precedents going back for more than a century teach that lesson and lead us to affirm Judge Weinfeld's dismissal of the complaint.

The litigation concerns four copyrighted songs; we shall state the nub of the matter as alleged in the complaint without going into details irrelevant to the jurisdictional issue. The music for the songs was composed by Vincent Youmans for use in a motion picture, "Flying Down to Rio," pursuant to a contract made in 1933 with RKO Studios, Inc. He agreed to assign to RKO the recordation and certain other rights relating to the picture during the existence of the copyrights and any renewals. RKO was to employ a writer of the lyrics and to procure the publishing rights in these for Youmans, who was "to pay said lyric writer the usual and customary royalties on sheet music and mechanical records." Subject to this, Youmans could assign the publication and small performing rights to the music and lyrics as he saw fit. In fact RKO employed two lyric writers, Gus Kahn and the defendant Edward Eliscu, who agreed to assign to RKO certain rights described in a contract dated as of May 25, 1933. Max Dreyfus, principal stockholder of the plaintiff Harms, which has succeeded to his rights, acquired Youmans' reserved rights to the music and was his designee for the assignment with respect to the lyrics. Allegedly—and his denial of this is a prime subject of dispute—Eliscu then entered into an agreement dated June 30, 1933, assigning his rights to the existing and renewal copyrights to Dreyfus in return for certain royalties.

When the copyrights were about to expire, proper renewal applications were made by the children of Youmans, by the widow and children of Kahn, and by Eliscu. The two former groups executed assignments of their rights in the re-

newal copyrights to Harms. But Eliscu, by an instrument dated February 19, 1962, recorded in the Copyright Office, assigned his rights in the renewal copyrights to defendant Ross Jungnickel, Inc., subject to a judicial determination of his ownership. Thereafter Eliscu's lawyer advised ASCAP and one Harry Fox—respectively the agents for the small performing rights and the mechanical recording license fees—that Eliscu had become vested with a half interest in the renewal copyrights and that any future payments which failed to reflect his interest would be made at their own risk; at the same time he demanded an accounting from Harms. Finally, Eliscu brought an action in the New York Supreme Court for a declaration that he owned a one-third interest in the renewal copyrights and for an accounting.

Harms then began the instant action in the District Court for the Southern District of New York for equitable and declaratory relief against Eliscu and Jungnickel. Jurisdiction was predicated on 28 U.S.C. § 1338; plaintiff alleged its own New York incorporation and did not allege the citizenship of the defendants, which concededly is in New York. Defendants moved to dismiss the complaint for failure to state a claim on which relief can be granted and for lack of federal jurisdiction; voluminous affidavits were submitted. The district court dismissed the complaint for want of federal jurisdiction, 226 F.Supp. 337 (1964).

■■ In line with what apparently were the arguments of the parties, Judge Weinfeld treated the jurisdictional issue as turning solely on whether the complaint alleged any act or threat of copyright infringement. He was right in concluding it did not. Infringement, as used in copyright law, does not include everything that may impair the value of the copyright; it is doing one or more of those things which § 1 of the Act, 17 U.S.C. § 1, reserves exclusively to the copyright owner. See Nimmer, Copyright §§ 100, 141 (1963). The case did

not even raise what has been the problem presented when a defendant licensed to use a copyright or a patent on certain terms is alleged to have forfeited the grant; in such cases federal jurisdiction is held to exist if the plaintiff has directed his pleading against the offending use, referring to the license only by way of anticipatory replication, but not if he has sued to set the license aside, seeking recovery for unauthorized use only incidentally or not at all. See Chief Justice Taft's review of the cases in Luckett v. Delpark, 270 U.S. 496, 46 S.Ct. 397, 70 L.Ed. 703 (1926); and Hart & Wechsler, The Federal Courts and the Federal System, 754–58 (1953). Here neither Eliscu nor Jungnickel had used or threatened to use the copyrighted material; their various acts, as the district judge noted, sought to establish their ownership of the copyrights by judicial and administrative action, including notice to the parties concerned.

However, the jurisdictional statute does not speak in terms of infringement, and the undoubted truth that a claim for infringement "arises under" the Copyright Act does not establish that nothing else can. Simply as a matter of language, the statutory phrasing would not compel the conclusion that an action to determine who owns a copyright does not arise under the Copyright Act, which creates the federal copyright with an implied right to license and an explicit right to assign. But the gloss afforded by history and good sense leads to that conclusion as to the complaint in this case.

Although Chief Justice Marshall, construing the "arising under" language in the context of Article III of the Constitution, indicated in Osborn v. Bank of the United States, 9 Wheat. 738, 22 U.S. 738, 822–827, 6 L.Ed. 204 (1824), that the grant extended to every case in which federal law furnished a necessary ingredient of the claim even though this was antecedent and uncontested, the Supreme Court has long given a narrower meaning to the "arising under" language in statutes defining the jurisdiction of the lower federal courts. Romero v. Inter-

national Terminal Operating Co., 358 U.S. 354, 379 n. 51, 79 S.Ct. 468, 3 L.Ed. 2d 368 (1959); Mishkin, The Federal "Question" in the District Courts, 53 Colum.L.Rev. 157, 160–63 (1953). If the ingredient theory of Article III had been carried over to the general grant of federal question jurisdiction now contained in 28 U.S.C. § 1331, there would have been no basis—to take a well-known example—why federal courts should not have jurisdiction as to all disputes over the many western land titles originating in a federal patent, even though the controverted questions normally are of fact or of local land law. Quite sensibly, such extensive jurisdiction has been denied. Shoshone Mining Co. v. Rutter, 177 U.S. 505, 20 S.Ct. 726, 44 L.Ed. 864 (1900).

The cases dealing with statutory jurisdiction over patents and copyrights have taken the same conservative line. The problem apparently first reached the Supreme Court in Wilson v. Sanford, 10 How. 99, 51 U.S. 99, 13 L.Ed. 344 (1850), under the Act of July 4, 1836, § 17, 5 Stat. 17, which allowed appeal to the Court, irrespective of the amount, in actions "arising under" the patent laws. The suit aimed to prevent use of a patented invention by a licensee who allegedly had failed to comply with the terms of the license and thus had forfeited its rights. Chief Justice Taney, dismissing the appeal, held the statute inapplicable to a dispute as to license or contract rights which "depended altogether upon the rules and principles of equity, and in no degree whatever upon any act of Congress concerning patent rights." The same principle was applied, and sometimes stated less cautiously, in decisions construing later legislation granting the federal courts exclusive jurisdiction of all suits "arising under" the patent or copyright laws of the United States. Act of July 8, 1870, §§ 55, 106, 16 Stat. 206, 215; Rev.Stat. §§ 629 Ninth and 711 Fifth (1875); Judicial Code of 1911, §§ 24 Seventh, 256 Fifth, 36 Stat. 1092, 1161. To take one of many examples, the Court said in New Marshall Engine Co. v. Marshall Engine Co., 223 U.S. 473, 478, 32 S.Ct. 238, 239, 56 L.Ed. 513 (1912):

> "The Federal courts have exclusive jurisdiction of all cases arising under the patent laws, but not of all questions in which a patent may be the subject-matter of the controversy. For courts of a state may try questions of title, and may construe and enforce contracts relating to patents. Wade v. Lawder, 165 U.S. 624, 627, 41 L.Ed. 852, 17 Sup.Ct.Rep. 425."

Just as with western land titles, the federal grant of a patent or copyright has not been thought to infuse with any national interest a dispute as to ownership or contractual enforcement turning on the facts or on ordinary principles of contract law. Indeed, the case for an unexpansive reading of the provision conferring exclusive jurisdiction with respect to patents and copyrights has been especially strong since expansion would entail depriving the state courts of any jurisdiction over matters having so little federal significance.

In an endeavor to explain precisely what suits arose under the patent and copyright laws, Mr. Justice Holmes stated that "[a] suit arises under the law that creates the cause of action"; in the case sub judice, injury to a business involving slander of a patent, he said, "whether it is a wrong or not depends upon the law of the State where the act is done" so that the suit did not arise under the patent laws. American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). The Holmes "creation" test explains the taking of federal jurisdiction in a great many cases, notably copyright and patent infringement actions, both clearly authorized by the respective federal acts, 17 U.S.C. § 101; 35 U.S.C. § 281, and thus unquestionably within the scope of 28 U.S.C. § 1338; indeed, in the many infringement suits that depend only on some point of fact and require no construction of federal law, no other explanation may exist.

Harms' claim is not within Holmes' definition. The relevant statutes create no explicit right of action to enforce or rescind assignments of copyrights, nor does any copyright statute specify a cause of action to fix the locus of ownership. To be sure, not every federal cause of action springs from an express mandate of Congress; federal civil claims have been "inferred" from federal statutes making behavior criminal or otherwise regulating it. See, e. g., Tunstall v. Brotherhood of Locomotive Firemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944); Reitmeister v. Reitmeister, 162 F.2d 691 (2 Cir. 1947); Note, Implying Civil Remedies From Federal Regulatory Statutes, 77 Harv.L.Rev. 285 (1963). Such statutes invariably impose a federal duty and usually create some express remedy as well, while the relevant copyright provision merely authorizes an assignment by written instrument, 17 U.S.C. § 28. It is true that although this difference carries the present case outside the classic doctrine of implied remedies, see Restatement, Torts § 286 (1934), expansion may not be foreclosed where appropriate, cf. Wheeldin v. Wheeler, 373 U.S. 647, 661–663, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963) (Brennan, J., dissenting); we would not be understood, for example, as necessarily agreeing with the implication of Republic Pictures Corp. v. Security-First National Bank, 197 F.2d 767, 770 (9 Cir. 1952), that federal jurisdiction would not exist if a complaint alleged that a state declined to enforce assignments of copyright valid under federal law. But no such case is here presented.

It has come to be realized that Mr. Justice Holmes' formula is more useful for inclusion than for the exclusion for which it was intended. Even though the claim is created by state law, a case may "arise under" a law of the United States if the complaint discloses a need for determining the meaning or application of such a law. The path-breaking opinion to this effect was Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), pointedly rendered over a dissent by Mr. Justice Holmes, 255 U.S. at 213–215, 41 S.Ct. 243. A recent application of this principle to 28 U.S.C. § 1338 is De Sylva v. Ballentine, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956), where the Supreme Court decided on the merits a claim to partial ownership of copyright renewal terms. Since there was no diversity of citizenship and no infringement, the only, and a sufficient, explanation for the taking of jurisdiction was the existence of two major questions of construction of the Copyright Act.[1] But Harms likewise does not meet this test. The crucial issue is whether or not Eliscu executed the assignment to Dreyfus; possibly the interpretation of the initial May, 1933, contract is also relevant, but if any aspect of the suit requires an interpretation of the Copyright Act, the complaint does not reveal it.[2]

Having thus found that appropriate pleading of a pivotal question of federal law may suffice to give federal jurisdiction even for a "state-created" claim, we cannot halt at questions hinging only on the language of the Copyright Act. For a new and dynamic doctrine, taking its name from Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), instructs us that even in the absence of express statute, federal law may govern

---

1. Although the parties did not question federal jurisdiction and the Court did not mention it, the issue had been sharply raised by a dissent in the Court of Appeals, see 226 F.2d 623, 634 (9 Cir. 1955), and can hardly have passed unnoticed.

2. Harms likewise does not bring itself within the test by reliance on the provision of § 24 of the Copyright Act that in the case of any work copyrighted "by an employer for whom such work is made for hire the proprietor of the copyright shall be entitled" to the renewal rights. The allocation of rights under the May, 1933, contract is governed by the contract itself, and the complaint suggests no manner in which the construction of § 24 of the Copyright Act might be relevant.

what might seem an issue of local law because the federal interest is dominant. Sola Elec. Co. v. Jefferson Elec. Co., 317 U.S. 173, 175–176, 63 S.Ct. 172, 87 L.Ed. 165 (1942), is relevant here, not only for its holding that the radiations of the antitrust laws governed an estoppel question in a patent license case but also for the Court's unwillingness to say whether the estoppel rule would have been "local" or "federal" even if the antitrust laws had not been invoked—a question which Scott Paper Co. v. Marcalus Mfg. Co., 326 U.S. 249, 255, 66 S.Ct. 101, 90 L.Ed. 47 (1945), apparently settled in favor of federal principles. If this "federal common law" governed some disputed aspect of a claim to ownership of a copyright or for the enforcement of a license, federal jurisdiction might follow—though one would wish to consider whether this might be founded on 28 U.S.C. § 1331 rather than on § 1338 and thus be concurrent and require a jurisdictional amount. But there is not the slightest reason to think that any legal question presented by Harms' complaint falls in the shadow of a federal interest suggested by the Copyright Act or any other source.

 Mindful of the hazards of formulation in this treacherous area, we think that an action "arises under" the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, e. g., a suit for infringement or for the statutory royalties for record reproduction, 17 U.S.C. § 101, cf. Joy Music, Inc. v. Seeco Records, Inc., 166 F.Supp. 549 (S.D.N.Y.1958), or asserts a claim requiring construction of the Act, as in De Sylva, or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim. The general interest that copyrights, like all other forms of property, should be enjoyed by their true owner is not enough to meet this last test.

Something should be said as to cases in this circuit deciding on the merits copyright claims apparently not involving infringement. There has been discussion whether the assumption of jurisdiction in Rossiter v. Vogel, 134 F.2d 908 (2 Cir. 1943), was properly rested on a basis similar to that suggested in this opinion with respect to De Sylva, see Cresci v. Music Publishers Holding Corp., 210 F. Supp. 253, 258–259 (S.D.N.Y.1962); Nimmer, Copyright § 131.12, at 570–571 (1963). But a glance at the complaint in that case, which relied on diverse citizenship as well as on what is now 28 U.S.C. § 1338, shows that the problem of federal jurisdiction was hardly troublesome and indicates why it went unmentioned. The equally undiscussed assumption of jurisdiction in Venus Music Corp. v. Mills Music, Inc., 261 F.2d 577 (2 Cir. 1958), cannot be thus explained, since there was no diversity, see 156 F.Supp. 753 (S.D. N.Y.1957). But the jurisdictional problem was doubtless obscured by the insistence of both parties that this action was for copyright infringement, see 156 F. Supp. at 753, and by the surface similarity with Rossiter v. Vogel, supra, as that case stands in the reports. Whether or not the complaint in Venus presented questions of copyright law sufficient to meet the criteria we have outlined—an issue on which we express no opinion—the complaint here does not.

 One more question remains. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), is often taken as indicating that if a complaint comes close enough to presenting a federal claim that the court has trouble in deciding that it doesn't, dismissal of that claim should be for "failure to state a claim upon which relief can be granted" rather than for lack of jurisdiction. Even if we were to assume that the district judge should have adopted the former ground in dismissing the claims allegedly created by federal law, his disposition ought nevertheless be affirmed. Montana-Dakota Util. Co. v. Northwestern Pub. Serv. Co., 341 U.S. 246, 249–250, 71 S.Ct. 692, 95 L.Ed. 912 (1951). The only apparent consequence of Bell v. Hood as applied

to this case [3] is that if the complaint is close enough to the line to give "jurisdiction," the court may have power to adjudicate a "pendent" or "ancillary" state claim. See 327 U.S. at 686, 71 S.Ct. at 778 (dissenting opinion of Chief Justice Stone). But a federal court need not try such a state claim when the non-existence of the federal claim has been determined on motion prior to trial on the merits, see Hart & Wechsler, supra, at 808 and decisions there cited—and the case against its doing so is particularly strong when, as here, a prior suit for the same relief is pending in a state court.

Affirmed.

3. There would seem to be no difference from the standpoint of *res judicata*. On either method of disposition the court would not have decided whether Eliscu had signed the alleged assignment or how his contract with RKO should be construed, but would have decided the insufficiency of the complaint to permit an inferior federal court to grant relief.