**GIBRALTAR, P.R., INC.**

v.

**OTOKI GROUP, INC.**

**Civil No. L–95–606.**

United States District Court, D. Maryland.

July 19, 1995.

Cynthia L. Leppert and Jeffrey T. Bubier, Baltimore, Maryland, for petitioner.

Dean Kasian, Baltimore, Maryland, and Louis S. Mastriani, Larry L. Shatzer, II and Gregory C. Anthes, Washington, DC, for respondent.

## MEMORANDUM

LEGG, District Judge.

On March 2, 1995, petitioner Gibraltar brought this action under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, against respondent Otoki to compel arbitration pursuant to a Joint Venture Agreement into which the parties had previously entered. The Court concludes that it lacks subject-matter jurisdiction over this action and shall accordingly DISMISS Gibraltar's petition by separate Order.

## I. *FACTS*

The undisputed evidence shows the following. Gibraltar is a privately held manufacturer of commercial and military apparel, and Otoki is a small sportswear design company. Both companies are located in Puerto Rico. On January 20, 1994, Gibraltar and Otoki formed a joint venture named Acorn Partners. Through this venture, Gibraltar received the benefit of Otoki's talent and expertise, and Otoki gained a needed cash infusion and the capability to expand its market beyond Puerto Rico.

Two provisions of the Joint Venture Agreement ("Agreement") that created Acorn Partners form the core of the instant dispute. First, Otoki agreed to assign all of its trademarks to Acorn Partners. Second, the Agreement contains a clause mandating the resolution of any disputes concerning the Joint Venture Agreement by arbitration in Baltimore, Maryland, rather than by litigation.

For reasons that remain unclear, relations between Gibraltar and Otoki soured. Around this time, Otoki took the position that the Agreement lacked valid consent and was therefore void. The invalidity of the Agreement, Otoki maintained, voided any transfer of trademarks to Acorn Partners Otoki may have effected pursuant to the Agreement.

In accordance with this position, Otoki has taken several actions. First, Otoki has threatened legal action against Acorn Partners if it uses or attempts to transfer the trademarks. In fact, Otoki has already commenced (BEL) suits in Puerto Rico's state and federal courts concerning its ownership of the trademarks and Gibraltar's alleged trademark infringement. Moreover, Otoki has contacted Acorn Partners's business associates and told them that Acorn Partners does not own Otoki's trademarks. Finally, Gibraltar alleges (and Otoki does not contradict) that members of Otoki's Board of Directors took from Acorn Partners certain records and other items necessary to use the trademarks.

As provided by the Agreement's arbitration clause, Gibraltar demanded arbitration of the dispute. When Otoki refused, Gibraltar filed the instant petition to compel arbitration. The parties have completed expedited discovery and submitted papers on the pertinent issues.[1]

## II. *DISCUSSION*

### A. *The Applicability of the Arbitration Act*

As an initial matter, the Court must determine whether the Arbitration Act applies to this case. *American Home Assurance Co. v. Vecco Concrete Constr. Co.*, 629 F.2d 961, 963 (4th Cir.1980). For the Arbitration Act to apply, the Court must find that "(1) there was an agreement in writing providing for arbitration and (2) the contract evidences a transaction involving interstate commerce." *Id.* at 963; *accord Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809 n. 4 (4th Cir.1989). The Court finds, and the parties do not dispute, that the Agreement satisfies both elements of this test. Having found that the Arbitration Act applies, the Court now turns to Gibraltar's petition.

---

1. Upon request of both parties, the Court has placed the parties' papers under seal.

### B. Subject–Matter Jurisdiction

■ The Arbitration Act "does not create any independent federal-question jurisdiction...." *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 941–42 n. 32, 74 L.Ed.2d 765 (1983). Therefore, "subject matter jurisdiction for [an Arbitration Act] claim must rest on some basis independent" of the Act, *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir.1991), whether it be "diversity of citizenship or some other independent basis for federal jurisdiction." *Moses H. Cone*, 460 U.S. at 25 n. 32, 103 S.Ct. at 941–42 n. 32. Because the parties here are not diverse, jurisdiction in this case must rest upon the existence of a federal question.

■ The Court determines the presence *vel non* of federal question jurisdiction by reference to the "well-pleaded complaint" rule. Under this rule, to invoke federal jurisdiction, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action," without consideration of any anticipated defenses. *Gully v. First Nat. Bank*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936); *Arthur Young & Co. v. City of Richmond*, 895 F.2d 967, 969 (4th Cir.1990). In the context of the Arbitration Act, the Court asks whether it would possess subject-matter jurisdiction if the case were litigated in the first instance rather than arbitrated. *Prudential–Bache Sec., Inc. v. Fitch*, 966 F.2d 981, 987–88 (5th Cir.1992); *TM Marketing, Inc. v. Art & Antiques Assocs.*, 803 F.Supp. 994, 999–1000 (D.N.J.1992).

■ Gibraltar's original petition, and to a greater extent its amended petition, point to the Lanham Act, 15 U.S.C. § 1051 *et seq.*, as the jurisdictional basis. Specifically, Gibraltar relies on 15 U.S.C. § 1116(a), which grants federal courts the power to issue injunctions "to prevent the violation under section 1125(a) of this title." The referenced section 1125(a) holds liable anyone who "uses in commerce" a trademark in a way which "is likely to cause confusion ... or to deceive ... as to the affiliation, connection, or association" of the party using the trademarks. Based on these provisions, Gibraltar argues that the Lanham Act, because it grants the Court jurisdiction over trademark cases, gives the Court the authority to order arbitration in this case.

Neither Gibraltar's original petition to arbitrate nor its amended petition, however, alleges that Otoki has infringed upon Acorn Partners's trademarks. The petitions allege only that Otoki is in various ways interfering with Acorn Partners's use of the trademarks. The Lanham Act prohibits none of the alleged actions; it only holds liable those who use another's trademark in a way that is likely to cause confusion. *E.g., Scotch Whisky Ass'n v. Majestic Distilling Co.*, 958 F.2d 594, 597 (4th Cir.), *cert. denied*, 506 U.S. 862, 113 S.Ct. 181, 121 L.Ed.2d 126 (1992). Because Gibraltar does not allege that Otoki is "using" the trademarks at all, its petition fails to allege a Lanham Act violation, and the Lanham Act therefore does not confer jurisdiction. Consequently, this case does not present a federal claim.

A line of cases concerning federal jurisdiction over copyright claims buttresses the Court's conclusion. These cases draw a distinction between claims under federal law (which properly invoke federal jurisdiction) and claims regarding contract disputes involving federally created interests (which do not). The analytical similarity between actions involving copyrights and those involving trademarks makes these cases particularly apposite. *See Foxrun Workshop, Ltd. v. Klone Mfg.*, 686 F.Supp. 86, 87 (S.D.N.Y. 1988) (noting similarity between copyright and trademark jurisdictional analyses).

*T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir.1964), *cert. denied*, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965), stands as the leading case in this area. There, the defendant, Edward Eliscu, had entered into a contract requiring him to assign his copyright interest in various songs he had written to Max Dreyfus, who later transferred his interest to his company, T.B. Harms. Instead of assigning the copyright as required by the contract, Eliscu retained the copyright and demanded royalties from the songs from T.B. Harms and its agents. T.B. Harms respond-

ed by suing Eliscu and his partner under the Copyright Act, 17 U.S.C. § 101 *et seq.*

The Second Circuit affirmed the district court's dismissal for lack of jurisdiction. Judge Friendly, writing for the court, said that T.B. Harms alleged only a dispute concerning the ownership of a copyright. *T.B. Harms,* 339 F.2d at 825. Because the Copyright Act did not create a right of action to determine the ownership of a copyright, the court held, plaintiff had not stated a claim under federal law. *Id.* at 827. The court summarized its holding by stating that a case arises under the Copyright Act "if and only if the complaint is for a remedy expressly granted by the Act … or asserts a claim requiring construction of the Act[,] [or] presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim." *Id.* at 828. *See also Arthur Young,* 895 F.2d at 969–70 (discussing and applying *T.B. Harms*); *Saturday Evening Post Co. v. Rumbleseat Press, Inc.,* 816 F.2d 1191 (7th Cir.1987) ("[A] dispute over the terms of a copyright license is not deemed to arise under the Copyright Act," citing *T.B. Harms*).

*T.B. Harms* and its progeny teach that a dispute over the ownership of property does not arise under federal law merely because the property involved is a federally created interest such as a trademark. Rather, to invoke federal question jurisdiction, federal law must supply the cause of action, furnish the exclusive remedy, or involve a substantial federal interest. *E.g., T.B. Harms,* 339 F.2d at 828.

Gibraltar resists this reasoning by citing several cases which, Gibraltar argues, found federal question jurisdiction on facts similar to the case at bar. In all of these cases, however, the plaintiff alleged copyright or trademark infringement, and the courts held that plaintiff's allegations supported federal question jurisdiction despite the presence of state law claims or defenses. *Arthur Young,* 895 F.2d at 971; *Schoenberg v. Shapolsky Publishers, Inc.,* 971 F.2d 926, 931 (2d Cir. 1992); *Costello Publishing Co. v. Rotelle,* 670 F.2d 1035, 1038 (D.C.Cir.1981); *Rosgoscirc v. Circus Show Corp.,* Nos. 92 Civ. 8498 (JSM), 93 Civ. 1304 (JSM), 1993 WL 277333 1993

U.S. Dist. LEXIS 9797 at *18–19 (S.D.N.Y. July 14, 1993).

Unlike these plaintiffs, Gibraltar has not alleged a violation of federal law. The cause of action underlying Gibraltar's petition for arbitration therefore does not arise under federal law, and the Court lacks subject-matter jurisdiction over this action. Accordingly, the Court shall dismiss Gibraltar's petition.

## III.  *CONCLUSION*

For the foregoing reasons, the Court shall DISMISS Gibraltar's petition to compel arbitration for lack of subject-matter jurisdiction by separate Order.