336 F.3d 982
 SCHOLASTIC ENTERTAINMENT, INC., a New York corporation, Plaintiff-Counter-Defendant-Appellee,
v.
FOX ENTERTAINMENT GROUP, INC., a Delaware corporation; Fox Family Channel, a division of International Family Entertainment, Inc., Defendants,
Fox Family Worldwide, Inc., a Delaware corporation, Defendant-Counter-Claimant, and
Fox Children's Network, Inc., a Delaware corporation; Fox Broadcasting Company, a Delaware corporation, Defendants-Counter-Claimants Appellants.
 No. 02-55667.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted February 13, 2003.
 Filed July 18, 2003.
 
 Robert C. Welsh, O'Melveny & Myers, Los Angeles, California, for the defendants-counter-claimants-appellants.
 Anjani Mandavia, Weissmann, Wolff, Bergman, Coleman, Grodin & Evall, Beverly Hills, California, for the plaintiff-counter-defendant-appellee.
 Appeal from the United States District Court for the Central District of California; Manuel L. Real, District Judge, Presiding. D.C. No. CV-01-08793-R.
 Before B. FLETCHER, ALARCÓN, and HAWKINS, Circuit Judges.
 OPINION
 MICHAEL DALY HAWKINS, Circuit Judge.
 
 
 1
 We confront one of the "knottiest problems in copyright jurisprudence" — whether a case involving interdependent copyright and contract claims "arises under" the federal copyright laws for the purposes of 28 U.S.C. § 1338(a). 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyrights § 12.01[A], at 12-14 (2003). The complaint before us essentially alleges copyright infringement for the sole purpose of obtaining a determination of ownership. Because questions regarding the ownership of a copyright are governed by state law, we determine that subject matter jurisdiction is lacking and affirm.
 
 FACTS AND PROCEDURAL HISTORY
 
 2
 In 1995, Appellant Fox Broadcasting Co. ("Fox") entered into a contract with Appellee Scholastic Entertainment, Inc. ("Scholastic"). Pursuant to the contract, Scholastic, which is a producer and marketer of motion picture, television, and video programming based on children's literary works, agreed to produce a television series based on the Goosebumps children's books and to license the rights to exhibit and distribute the shows to Fox. Fox was to air the initial exhibition of the shows on Fox Broadcasting and later distribute the series to other television outlets for a period of 15 years. In addition to the original exhibition fees, Scholastic was entitled to a portion of the profits made during the distribution phase. By its terms, the contract will expire in 2013.
 
 
 3
 For several years the parties performed their responsibilities under the contract without conflict. Scholastic produced 62 half-hour programs and six one-hour specials for which Fox paid an initial exhibition fee of approximately $33 million. In mid-1999, however, Scholastic learned that the Fox Family Channel ("FFC"), which was not a party to the contract, was airing the Goosebumps series. Scholastic received no compensation for these airings, which continued through August of 2001.
 
 
 4
 Scholastic confronted Fox, claiming that it was owed at least $2.7 million as a result of the FFC airings because they constituted a distribution under the agreement. In contrast, Fox asserted that the FFC airings were exhibitions and, therefore, Scholastic was not entitled to additional licensing fees. After attempting to resolve the disagreement for over a year, Scholastic filed suit in state court for breach of contract and fiduciary duty.
 
 
 5
 Discovery in the state court proceeding commenced. As a result, Scholastic learned that Fox had given FFC an irrevocable license to exhibit, and to permit others to exhibit, the Goosebumps series for a one-time cost of $5,000 per episode and $10,000 per special. As a result, Scholastic claims it was deprived of the benefit of the original agreement between itself and Fox. According to Scholastic, this unauthorized licensing frustrated the entire purpose of the agreement because the Fox airings alone were not intended to comprise Scholastic's total compensation for the production of the series. Instead, Scholastic was dependent on the good faith efforts of Fox to distribute the series to other outlets at market prices. Presumably, the price paid by FFC was not the price that would have prevailed had FFC been unrelated to Fox.
 
 
 6
 Upon ascertaining the extent of Fox's violation, Scholastic sent a letter to Fox terminating the agreement in September 2001 and informed Fox that it was contemplating re-licensing the Goosebumps series to third parties. Fox rejected the notion that Scholastic was entitled to terminate the contract.
 
 
 7
 Scholastic then filed suit in district court claiming that the agreement had been effectively terminated and that the ongoing use of the Goosebumps series by Fox and FFC constituted copyright infringement. Fox counterclaimed, alleging that the contract was still in effect and requesting that the district court enjoin Scholastic from licensing the agreement to third parties. The district court dismissed Scholastic's claims without prejudice and granted Fox's request for a preliminary injunction enjoining Scholastic from re-licensing the agreement.
 
 
 8
 The district court plainly concluded that the underlying dispute between Scholastic and Fox was contractual — whether the agreement had been effectively terminated — and, therefore, suitable for adjudication in state court. Scholastic did not appeal the dismissal, evidently content to litigate in state court what it believed, consistent with the district court's dismissal, to be a question of contract law. Furthermore, Scholastic stipulated that it would forego any attempt to relicense the Goosebumps series until a determination of ownership is made.
 
 
 9
 Approximately four months later, the district court sua sponte dismissed Fox's counterclaims. In doing so, the district court refused to address the cross-motions for summary judgment or other substantive matters, determining them to be moot as a result of the dismissal. That the dismissal was based on a lack of subject matter jurisdiction becomes clear in light of the district court's statement: "This is a contract case. It's a contract case simply and the State Court can decide it."[1]
 
 
 10
 In summary, Scholastic and Fox entered into a contract, the subject matter of which was the copyright protected television series Goosebumps. Upon learning of material breaches by Fox as a result of the FFC airings, Scholastic terminated the agreement. Scholastic's termination, if effective, would cause the reversion of all ownership rights to Scholastic, rendering Fox's continuing use of the series copyright infringement. Fox, on the other hand, claims that the contract is still in effect and that, pursuant to the agreement, it alone has the right to exhibit and distribute the series. Because Scholastic has stipulated that it will not relicense the Goosebumps series until a determination is made as to the status of the agreement, however, Scholastic cannot be guilty of copyright infringement. Therefore, this case hinges entirely on whether Scholastic's attempt to terminate the agreement was successful. It is important to note that this Court now considers only the dismissal of Fox's counterclaims, as Scholastic chose not to appeal the dismissal of its claims but instead submitted a refashioned complaint encompassing only the contractual issue to the state court.
 
 
 11
 Fox asserts on appeal that the district court erred in dismissing its counterclaims. Specifically, Fox alleges that: (1) the sua sponte dismissal violated its due process rights; (2) the district court had subject matter jurisdiction; and (3) it is entitled to summary judgment.
 
 STANDARD OF REVIEW
 
 12
 Dismissal for lack of subject matter jurisdiction is reviewed de novo. Vestron, Inc. v. Home Box Office Inc., 839 F.2d 1380, 1381 (9th Cir.1988).
 
 DISCUSSION
 I. Due Process
 
 13
 Fox contends that the district court's sua sponte dismissal of its counterclaims deprived it of due process. While a party is entitled to notice and an opportunity to respond when a court contemplates dismissing a claim on the merits, Franklin v. Oregon, 662 F.2d 1337, 1340-41 (9th Cir.1981); Dodd v. Spokane County, 393 F.2d 330, 334 (9th Cir.1968), it is not so when the dismissal is for lack of subject matter jurisdiction. Cal. Diversified Promotions, Inc. v. Musick, 505 F.2d 278, 280 (9th Cir.1974) ("It has long been held that a judge can dismiss sua sponte for lack of jurisdiction."). The district court's power to dismiss under such circumstances, however, is not unlimited. Id. "`[A]ll of the circumstances must be considered' in determining whether the absence of notice as to the possibility of dismissal or the failure to hold an adversary hearing renders the dismissal void." Id. In this case, the parties had extensively briefed the issue of subject matter jurisdiction as a result of the previous dismissal without prejudice of Scholastic's claims. As such, any additional briefing would have been duplicative and unnecessary. Fox cannot claim to have been surprised or unfairly prejudiced as a result of the sua sponte dismissal.
 
 II. Subject Matter Jurisdiction
 
 14
 The federal courts have exclusive jurisdiction over "any civil action arising under any Act of Congress relating to ... copyrights." 28 U.S.C. § 1338. At the same time, it is well established that just because a case involves a copyright does not mean that federal subject matter jurisdiction exists. Vestron, 839 F.2d at 1381. Federal courts have consistently dismissed complaints in copyright cases presenting only questions of contract law. Dolch v. United California Bank, 702 F.2d 178, 180 (9th Cir.1983). As a result, the federal courts walk a fine line between usurping the power of the state courts and providing redress for copyright infringement. This balancing act is further complicated by the interdependence of contract and copyright claims, which can camouflage the genuine issues to be resolved. See, e.g., Vestron, 839 F.2d at 1382.
 
 
 15
 The Ninth Circuit follows the majority rule as outlined in T.B. Harms Co. v. Eliscu, 339 F.2d 823 (2d Cir.1964), to determine if copyright subject matter jurisdiction exists. See, e.g., Dolch, 702 F.2d at 180; see also Scandinavian Satellite Sys. v. Prime TV Ltd., 291 F.3d 839, 844 (D.C.Cir.2002); Bassett v. Mashantucket Pequot Tribe, 204 F.3d 343, 347 (2d Cir. 2000). In T.B. Harms, neither the plaintiff nor the defendant had threatened to use the copyrighted material, but merely sought a judicial determination of ownership. 339 F.2d at 825. The court noted that "[t]he relevant statutes create no explicit right of action to enforce or rescind assignments of copyrights, nor does any copyright statute specify a cause of action to fix the locus of ownership." Id. at 827. Judge Friendly stated that:
 
 
 16
 an action "arises under" the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement or for the statutory royalties for record reproductions, or asserts a claim requiring construction of the Act ... or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim.
 
 
 17
 Id. at 828 (citations omitted). In T.B. Harms, the Second Circuit found that the test was not satisfied and the district court was correct to dismiss the claims. Id. at 827. In summary, the T.B. Harms test requires the district court to exercise jurisdiction if: (1) the complaint asks for a remedy expressly granted by the Copyright Act; (2) the complaint requires an interpretation of the Copyright Act; or (3) federal principles should control the claims. Bassett, 204 F.3d at 349.
 
 
 18
 The test outlined in T.B. Harms is essentially a reiteration of the "well-pleaded complaint" rule that federal jurisdiction exists only when a federal question is presented on the face of a properly pleaded complaint. ARCO Envtl. Remediation, L.L.C. v. Dept. of Health and Envtl. Quality of the State of Montana, 213 F.3d 1108, 1113 (9th Cir.2000); see also Republican Party of Guam v. Gutierrez, 277 F.3d 1086, 1088-89 (9th Cir.2002). Here we must determine whether Fox's claims "arise under" the Copyright Act or merely seek a determination of ownership as in T.B. Harms.
 
 
 19
 Because the issue presented in this case is complex and heavily fact dependent, a review of our case law is in order. These cases show the difficulties encountered when determining whether a potential copyright plaintiff has made claims that properly invoke federal jurisdiction. In the first two cases, Republic Pictures Corp. v. Security-First National Bank of Los Angeles, 197 F.2d 767 (9th Cir.1952), and Topolos v. Caldewey, 698 F.2d 991 (9th Cir.1983), the jurisdictional issue was easily resolved. Republic Pictures considered whether a federal court has jurisdiction to foreclose a mortgage on a copyright. 197 F.2d at 767. We determined that just because "a right has its origin in federal law" does not mean "that a federal court has jurisdiction over matters which grow from that right." Id. at 769. We analogized that while it is true that a "large number of land titles in this country originate with a grant from the United States of America," it is not true "that federal courts [have] authority to hear and decide litigation involving disputes among persons claiming the land because of the original grant by the United States." Id. at 769. Based on this reasoning, we decided that a dispute over the foreclosure of a mortgage, the subject matter of which happened to be copyright, did not create subject matter jurisdiction. Id. at 770. In such circumstances, the absolute preeminence of the state law issue is clear.
 
 
 20
 In Topolos, the plaintiff wrote a book on Napa Valley pursuant to a publishing contract with Vintage Image. Topolos, 698 F.2d at 992. Subsequent revised and expanded versions were published listing both Topolos and Vintage Image as copyright holders. Id. When Vintage Image later published another book on the same subject not listing Topolos as a copyright holder, Topolos brought suit in district court seeking damages and injunctive relief for copyright infringement. Id. The district court, finding that it would have to resolve the "rights and obligations arising under the publishing contract," dismissed for lack of subject matter jurisdiction. Id. at 993. We reversed because it was clear that Topolos had successfully fulfilled the pleading requirements by alleging ownership and infringement. Id. at 994-95. Furthermore, it was obvious that the claim required a determination as to whether the two works, Topolos' original book and the most recent version distributed by Vintage Image, were sufficiently similar to warrant a finding of infringement — a clear question of copyright law.
 
 
 21
 In the next two cases, we were presented with more complex facts. In Dolch v. United California Bank, 702 F.2d 178 (9th Cir.1983), we were asked to decide whether subject matter jurisdiction exists when a plaintiff seeks to overturn the assignment of copyright renewal rights. The complexity is introduced because the Copyright Act governs, to some extent, the assignment of copyrights. Id. at 179-80. Section 28 of the Copyright Act "permits copyrights to be assigned by an instrument in writing or by testament." Id. at 180. Relying on this, the plaintiff in Dolch claimed that the Copyright Act also "permits an assignment to be given as a gift." Id. Regardless, we determined that the question
 
 
 22
 is not one that requires an interpretation of the Copyright Act or a weighing of its policies. The nature and scope of renewal rights, as well as their assignability, are federal questions, but the conditions for valid assignment are not. Thus, federal questions are presented by such issues as the class of persons in whom renewal rights can vest, or whether renewal rights are property that can be assigned under section 28, but whether an assignment of renewal rights without consideration is a valid assignment is a state law question.
 
 
 23
 Id. (citations omitted). Thus, we found that jurisdiction was not present, irrespective of the fact that we were forced to determine whether the Copyright Act governed the validity of an assignment.
 
 
 24
 Effects Associates, Inc. v. Cohen, 817 F.2d 72 (9th Cir.1987), confronted similarly complex facts. Effects Associates ("Effects") alleged that it created "several original motion picture special effects shots" which were later incorporated into a film produced by Cohen. Id. at 72-73. Effects also claimed that it had an oral agreement with Cohen that Cohen would pay Effects for the works. Id. at 73. The district court dismissed for lack of subject matter jurisdiction finding that the "threshold issue to be resolved was a question of state contract law." Id. We reversed, finding that "ownership of the copyright is ... always a threshold question. Only when such ownership is the sole question for consideration are federal courts without jurisdiction." Id. at 74 (quoting Topolos, 698 F.2d at 994). In Effects, we clearly established that the existence of an ownership issue, in addition to copyright issues, does not deprive this court of jurisdiction.
 
 
 25
 In Vestron, Inc. v. Home Box Office Inc., 839 F.2d 1380 (9th Cir.1988), the plaintiff alleged that it held the exclusive distribution rights to the motion pictures "Hoosiers" and "Platoon" pursuant to a contract that it had with the producers of the films. The success of the films, however, generated a dispute between the parties as to the validity of the contract. Id. at 1381. As a result, the producer notified Vestron that the contract was terminated. Id. Soon thereafter, the producer resold the rights to "Hoosiers" and "Platoon" to HBO, who aired the films. Id.
 
 
 26
 Vestron and this case are similar in that there was a disagreement over the terms of a contract involving ownership of a copyright that led the producer, and original copyright holder, to terminate the agreement. This termination then led to a disagreement over the ownership of the copyright. However, they differ in at least one significant respect — the producer of "Hoosiers" and "Platoon" actually resold the rights to the films and HBO, the subsequent purchaser of those rights, actually exhibited them. Scholastic has stipulated, however, that it will not resell the Goosebumps series until the courts resolve whether it effectively terminated the contract between itself and Fox. Therefore, in Vestron, the ownership issue was a threshold determination, but it was not the sole issue in the case. This case is more similar to T.B. Harms because the ownership issue is the sole question presented for review. As such, subject matter jurisdiction does not exist.
 
 
 27
 Fox makes one additional argument in an attempt to support jurisdiction. Relying on Rano v. Sipa Press, Inc., 987 F.2d 580 (9th Cir.1993), it alleges that Scholastic's attempt to terminate the agreement is governed by the Copyright Act and is, therefore, suitable for adjudication in the federal courts. In general, "we rely on state law to fill the gaps Congress leaves in federal statutes." Foad Consulting Group, Inc. v. Musil Govan Azzalino, 270 F.3d 821, 827 (9th Cir.2001). This practice was clearly illustrated by us in Dolch v. United California Bank, 702 F.2d at 180, when we determined that the Copyright Act did not govern the gifting of an assignment. When confronted with a similar dilemma in Foad Consulting, we found that "where the Copyright Act does not address an issue, we turn to state law to resolve the matter." 270 F.3d at 827. Therefore, Fox's argument hinges on whether the Copyright Act addresses Scholastic's termination or whether state law must be used.
 
 
 28
 In Rano,[2] we found that Section 203 of the Copyright Act governed the termination of a copyright license of indefinite duration. 987 F.2d at 585. The Goosebumps contract, however, is slated to expire in 2013. Therefore, because the contract at issue is of a definite duration, neither Section 203, nor any other provision of the Copyright Act, governs Scholastic's right to terminate or rescind the license. Instead, California state law should govern this determination.[3]
 
 
 29
 Finally, Fox's contention that it is entitled to summary judgment is mooted because this appeal is limited to whether the dismissal of Fox's counterclaims was correct. Finding that the district court did, in fact, lack subject matter jurisdiction, there is no need to address Fox's request for summary judgment.[4]
 
 CONCLUSION
 
 30
 We determine that subject matter jurisdiction is lacking and that the district court did not violate Fox's due process rights by sua sponte dismissing the claims. Once Scholastic's claims were dismissed, the only remaining issue was the validity of the termination. Scholastic's success in terminating the agreement is a pure question of state contract law appropriate for adjudication in the California courts.
 
 
 31
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 We are concerned that the state court subsequently found, in direct contravention to the district court, that it did not have jurisdiction over Scholastic's request for a declaration that the agreement had been effectively terminated because it involved the Copyright Act, over which the federal courts have exclusive jurisdiction. As we explain later, however, this conclusion was erroneous
 
 
 [2]
 The decision inRano has been called into serious question by courts as well as commentators. E.g., Walthal v. Rusk, 172 F.3d 481, 483-84 (7th Cir.1999); Korman v. HBC Fla., Inc., 182 F.3d 1291, 1295 (11th Cir.1999).
 
 
 [3]
 With respect to Fox's Lanham Act claim, we find that it is merely an attempt to restate the other two claims in the complaint, and does not independently create subject matter jurisdiction
 
 
 [4]
 We further note that Fox's argument that the termination issue has been finally decided by the district court is inaccurate because the dismissal of Scholastic's claims without prejudice is not considered a judgment on the meritsSee In re Marino, 181 F.3d 1142, 1144 (9th Cir.1999) (only a dismissal with prejudice has res judicata effect); see also Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1159 (9th Cir.2002) (collateral estoppel does not apply to claims which are not litigated or decided on the merits).